For the reasons assigned, the judgment appealed from is affirmed.

85 So.2d 22

**MISSISSIPPI VALLEY ELECTRIC COMPANY**

v.

**GENERAL TRUCK DRIVERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL 270, AFFILIATED WITH THE A. F. OF L., et al.**

No. 42638.

Dec. 12, 1955.

Rehearing Denied Jan. 16, 1956.

Henican, James & Cleveland, Murray F. Cleveland, New Orleans, for relator.

Dodd, Hirsch & Barker, Baton Rouge, for respondents.

HAWTHORNE, Justice.

Mississippi Valley Electric Company, admittedly engaged in interstate commerce, brought suit in the Civil District Court for the Parish of Orleans to enjoin picketing by the General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270, A. F. of L. The union picket lines consisted of one picket before each of the company's two places of business in the City of New

Orleans, and the picketing was conceded to be peaceful. The district court dismissed the company's suit on the ground that the state court was without jurisdiction ratione materiae because the state court's jurisdiction had been preempted by the authority vested in the National Labor Relations Board under the Labor Management Relations Act, 1947,[1] 29 U.S.C.A. § 151 et seq. (commonly called the Taft-Hartley Act), as interpreted by recent decisions of the Supreme Court of the United States. On application of the company we granted writs to review the holding of the court below.

The pertinent facts are these:

For the four calendar years prior to 1955, the company had a collective bargaining contract with its truck drivers represented by General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local 270, A. F. of L., popularly called the Teamsters Union. This contract was an annual one, renewable at the end of each calendar year, and during the time it was in force the company employed a minimum of two truck drivers and sometimes more. These drivers were members of the Teamsters Union, and during the existence of the contract the company recognized and dealt with the Teamsters Union as the collective bargaining representative of its truck drivers. In October, 1954, the union sought to negotiate for a renewal of the contract in 1955. In reply to this request the company informed the union that it was going to allow the

existing contract to expire, and that it did not want to sign the proposed new contract, which was objectionable to it, or to enter into negotiations with the Teamsters Union. The 1954 collective bargaining contract expired on December 31. A few days later the company temporarily laid off, for lack of work, one of the two regularly employed truck drivers. The following April, after fruitless efforts by the union to obtain a contract with the company, the single remaining truck driver, who was a member of that union, struck, and picket lines were established before the company's places of business. The company's electrical employees, members of the International Brotherhood of Electrical Workers, refused to cross the picket lines, as did other union members who worked for persons doing business with the company.

A few days after the strike had begun and while the picketing was going on, the company filed a petition with the National Labor Relations Board, alleging that the Teamsters Union had presented a claim to be recognized as the bargaining representative of the company's employees (one truck driver) as defined in Section 9 of the Labor Management Relations Act, and requesting the Board to proceed under its proper authority.

In about 10 days the regional director of the National Labor Relations Board wrote the company that its petition for investigation and certification of representation under Section 9 of the National Labor Rela-

---

1. Formerly known as the National Labor Relations Act.

tions Act had been carefully investigated and considered, and had been dismissed because it did not appear that further proceedings were warranted inasmuch as the unit described in the petition (one employee) was inappropriate for the purposes of collective bargaining. The regional director further informed the company in his letter that under the rules and regulations of the Board a review of this action could be obtained by filing a request for review with the National Labor Relations Board, Washington, D. C., within 10 days from the receipt of the letter.

It is proper that we digress here from our statement of the pertinent facts in order to consider the provisions of Section 9 of the Act under which the above petition was filed and the ruling made.

Section 9(a) of the Act, 29 U.S.C.A. § 159 (a), provides that "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. * * *" Under Section 9(c) (1) (B), when a petition has been filed by an employer alleging that one or more labor organizations have presented to it a claim to be recognized as representative as defined in Section 9(a), quoted above, the Board shall investigate the petition and, if it has reason-able cause to believe that a *question of representation* affecting commerce exists, shall provide for an appropriate hearing upon due notice; after such hearing, if the Board finds that *such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.*

When we consider these provisions of the Act, it is patent that in dismissing the company's petition the Board simply found that a question of representation did not exist under Section 9, because the unit named in the petition—one employee, a member of the union—was not such a unit as was contemplated by the provisions of the Act for which the Board could call an election by secret ballot and certify a representative for collective bargaining. In other words, the Board found that one employee was not a unit appropriate for the purposes specified in Section 9.

The company did not seek a review within 10 days of the action of the regional director dismissing its petition for investigation and certification of representation under Section 9 of the Act, as it had a right to do, but instituted the present proceedings in the state court for injunctive relief. To the company's suit in the state court the union filed an exception to the jurisdiction ratione materiae.

After a hearing the judge of the lower court concluded that the exception to the jurisdiction ratione materiae filed by the union was well founded. However, he granted a preliminary injunction to main-

tain the status quo in order to give either party an opportunity to obtain from the National Labor Relations Board a ruling either that the Board could not or would not entertain jurisdiction or that it would entertain jurisdiction and adjudicate the matter.

The employer then filed a charge with the National Labor Relations Board, stating that the Teamsters Union was engaged in unfair labor practices within the meaning of Section 8(b), Subsection 4, of the Labor Management Relations Act, and setting forth in detail all of the facts of this controversy. Two weeks later the National Labor Relations Board through its acting regional director informed the company that its charge had been carefully investigated and considered, and that "while the investigation disclosed that the Board has jurisdiction over Mississippi Valley Electric Company, whose operations in interstate commerce exceed the Board's minimum jurisdictional standards, the charges that the above named Union has engaged in *conduct in violation of Section 8(b) (4) of the Act* are without merit". (All italics in quoted material in this opinion are ours.)

Pursuant to the rules of the Board, the company filed with the general counsel of the Board in Washington a request for a review of the action of the regional director. However, the assistant general counsel of the Board advised the company that its appeal from the refusal of the regional director to issue a complaint charging violations of Section 8(b) (4) of the Act had

been duly considered by the general counsel, and that "the General Counsel sustains the ruling of the Regional Director. The General Counsel concludes there is *insufficient evidence* of violations to warrant further proceedings".

Counsel for the company then requested of the general counsel a clarification of the above ruling or a reconsideration of the matter. In reply to this request and in clarification of the action sustaining the regional director, the company was told by the associate general counsel of the Board that on the basis of the facts disclosed by the investigation of the charge the conduct complained of did not constitute an unfair labor practice within the meaning of Section 8(b) (4) of the National Labor Relations Act, and that the company's request for a reconsideration was denied since no persuasive reason had been presented to alter the original decision denying the appeal.

Taking notice of all these facts, petitions, and rulings, the trial judge concluded that the National Labor Relations Board had exercised jurisdiction of the matter and had decided that the union's conduct complained of by the employer was not an unfair labor practice. For this and other reasons given by the judge in his written reasons for judgment, the application of the company for an injunction was dismissed for want of jurisdiction ratione materiae. This court granted writs to review this judgment.

The question which we are called upon to decide here is whether under the pertinent

facts of this case the state court has jurisdiction to enjoin peaceful picketing by the union, or whether state jurisdiction has been preempted by the authority vested in the National Labor Relations Board by Congress.

In support of their respective contentions both parties to this litigation cite and rely on two cases decided by this court, Gulf Shipside Storage Corporation v. Moore, No. 41,859 on the docket of this court, decided March 21, 1955,* and Arkansas Oak Flooring Co. v. United Mine Workers, 227 La. 1109, 81 So.2d 413.

What was said by this court in the Gulf Shipside case, however pertinent it may be, cannot be relied on as decisive of the question here presented because that case never became final. This court granted a rehearing in Gulf Shipside for further consideration of the issues there presented, which had the effect of setting aside the decision, and while the case was pending on rehearing it was compromised.

In the Arkansas Oak Flooring Co. case, this court affirmed a judgment of the lower court enjoining picketing. We concluded on the question of jurisdiction that such picketing was still open to control by the state courts for the reason that the union in that case was a non-complying union under the provisions of Section 9 of the Taft-Hartley Act, in that it had failed to file with the National Labor Relations Board the re-

quired non-Communist affidavits, financial data, etc.; that the services and facilities of the Board were therefore not open to this union for either representation or unfair labor practices; that under these facts there was no obligation on the employer to request the facilities or services of the Board; that the action of the employer in refusing to recognize a non-complying union was not an unfair labor practice; and that consequently the state court had jurisdiction to issue the injunction. In short, this court reached the conclusion that the National Labor Relations Board was without jurisdiction because the union was a non-complying union under the provisions of Section 9 of the Taft-Hartley Act. In the instant case there is no suggestion made that the Teamsters Union is a non-complying union under the provisions of Section 9 of the Act. Moreover, our holding in the Arkansas Oak Flooring Co. case cannot at this time be considered decisive because certiorari has been granted by the Supreme Court of the United States to review our holding, and the case is now before that court for decision.

▬ Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 484, 99 L.Ed. 546, was decided by the Supreme Court of the United States in March, 1955. In that case the Supreme Court, recognizing that on numerous occasions it had to deal "with this delicate problem of the interplay between state and federal jurisdiction touching labor

---

* Dismissed in open court.

relations", reviewed its decisions on that problem. The court pointed out that it had held that the state courts had jurisdiction to enjoin mass picketing, threats of bodily injury, property damage to employees, obstruction of streets, unannounced work stoppages, attempted enforcement of a maintenance of membership clause in a contract between the employer and the union, etc., as such conduct was not subject to regulation by the federal Board either by prohibition or by protection.[2] The Supreme Court made it perfectly clear, however, that under its decisions the state court may not prohibit "the exercise of rights which the federal Acts protect", nor can the state court "enjoin under its own labor statute conduct which has been made an 'unfair labor practice' under the federal statutes". In other words, if the activity complained of is either protected or prohibited by the provisions of the Labor Management Relations Act, 1947, then the jurisdiction of the state court has been preempted, and primary jurisdiction is vested in the National Labor Relations Board under the authority given that Board by the Act.

It is true that in the instant case the National Labor Relations Board has ruled that the activity of the union did not constitute an unfair labor practice within the meaning of Section 8(b) (4), but this ruling is not sufficient of itself to vest jurisdiction of the controversy in the state court. The rul-

ing of the Board was simply that there was no unfair labor practice under this designated subsection of Section 8. The Board has not ruled that no unfair labor practice exists in this controversy. It may be that the activity of the union is prohibited by some other provision of the Act, or it may well fall within the protection of Section 7.

In the Anheuser-Busch case, supra, the Board had ruled, as here, that there was no unfair labor practice under the section of the Act under which the charge of unfair labor practice was made, but the United States Supreme Court held that regardless of this ruling the Missouri court was without jurisdiction. In that case the Supreme Court said:

"* * * even if it were clear that no unfair labor practices were involved, it would not necessarily follow that the State was free to issue its injunction. If this conduct does not fall within the prohibitions of § 8 of the Taft-Hartley Act, it may fall within the protection of § 7, as concerted activity for the purpose of mutual aid or protection."

It is not our intention to hold that the peaceful picketing of which the employer complains in the instant case falls within the prohibition or protection of the Taft-Hartley Act, for we recognize that primary jurisdiction to determine these questions rests with the National Labor Relations Board, and not with the state court. Weber v. Anheuser-Busch, Inc., supra. However,

2. It is clear that the instant case does not fall within any of these various classes of cases in which the state court may exercise jurisdiction.

we might observe that the picketing here sought to be enjoined is not restrained or prohibited by any provisions of the Taft-Hartley Act, and accordingly the statement of the Supreme Court in Garner v. Teamsters, C. & H. Local Union, 346 U.S. 485, 499, 74 S.Ct. 161, 170, 98 L.Ed. 228, quoted with approval in the Anheuser-Busch case, is pertinent:

 detailed prescription of a procedure for restraint of specified types of picketing would seem to imply that other picketing is to be free of other methods and sources of restraint. For the policy of the National Labor Management Relations Act *is not to condemn all picketing* but only that ascertained by its prescribed processes to fall within its prohibitions. *Otherwise, it is implicit in the Act that the public interest is served by freedom of labor to use the weapon of picketing. For a state to impinge on the area of labor combat designed to be free is quite as much an obstruction of federal policy as if the state were to declare picketing free for purposes or by methods which the federal Act prohibits."*

In the Anheuser-Busch case the Supreme Court conceded that " * * * it is not easy for a state court to decide, merely on the basis of a complaint and answer, whether the subject matter is the concern exclusively of the federal Board and withdrawn from the State". However, in that case the court made it perfectly clear that " * * *

where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and *where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction* in deference to the tribunal which Congress has selected for determining such issues in the first instance".

 This test is helpful to us in deciding the case at bar. The type of picketing here complained of is not prohibited by the Act and in our opinion may be reasonably deemed to come within the protection afforded by the Act. Consequently the judgment of the district court sustaining the exception to the jurisdiction ratione materiae is correct.

 If upon the filing of the unfair labor practice charge by the employer in the instant case the National Labor Relations Board had issued a complaint against the union, it would be obvious that the state court lacked jurisdiction of this controversy. However, the refusal of the Board in this case to issue a complaint did not automatically vest jurisdiction of the controversy in the state court. The National Labor Relations Board appears to us to have accepted jurisdiction of the instant suit. After careful investigation into the charge made by the employer the Board made its ruling on the ground that there was not sufficient evidence to issue an unfair labor

complaint. In other words, it decided the case on its merits.

Both parties to this litigation concede that the instant case is a labor dispute in interstate commerce, and that, if the activity here complained of, peaceful picketing, is either prohibited or protected under the provisions of the Taft-Hartley Act, the state court is without jurisdiction. Counsel for the company say, however, that, since the National Labor Relations Board has ruled that the activity of the union is not an unfair labor practice, it is not prohibited by the Act, and, further, that such activity, being for an unlawful purpose, is not protected by the Act, and thus, being neither prohibited nor protected, it is open to state control.

As we have heretofore pointed out, the National Labor Relations Board *has not ruled* that no unfair labor practice exists in this controversy. It did rule that the activity of the union did not constitute an unfair labor practice within the meaning of Section 8(b) (4). It may be that the activity of the union is prohibited by some other provisions of the Act, or it well may be that the employer is engaged in an activity prohibited by the Act; but neither of these questions has been passed upon by the National Labor Relations Board. Its ruling that there was no unfair labor practice under a designated section of the Act, therefore, is not sufficient of itself to vest jurisdiction in the state court. Weber v. Anheuser-Busch, Inc., supra.

Moreover, there is no merit to the company's contention that the picketing of its plants was unlawful and hence not protected by the Act because its purpose was to force the company to recognize a union as the bargaining representative of a single employee not constituting an appropriate unit. The fact that the National Labor Relations Board has ruled that a single employee is not an appropriate unit does not necessarily make the picketing unlawful or for an unlawful purpose. As we have already pointed out, what the National Labor Relations Board held was that a question of representation did not exist under Section 9 of the Act, or that one employee was not a unit for which the Board could call an election by secret ballot and certify a representative for collective bargaining. The company does not point out any provision of the Taft-Hartley Act which makes unlawful the peaceful picketing conducted here, nor do we know of any such provision. However, if we should assume, as contended by the company, that this picketing is prohibited by the Act and consequently is unlawful, or is in violation of the ruling of the National Labor Relations Board, this would constitute conduct prohibited by the Act, and the Board alone, and not the state court, is vested with jurisdiction to enter the necessary restraining order.

The judgment of the lower court sustaining the exception to the jurisdiction ratione materiae and dismissing relator's suit is affirmed at relator's costs.

FOURNET, C. J., concurs in the decree.