AYRES, Judge.
This is an appeal from a judgment sustaining an exception to the jurisdiction of the court ratione materiae and dismissing plaintiffs’ suit. The plaintiffs are Local 369, Bakery and Confectionery Workers International Union of America, its Special Trustee, and various members thereof. The defendants are Local 369 of the American Bakery and Confectionery Workers International Union, AFI^CIO and various members thereof. By this action plaintiffs seek to enjoin the defendants and all persons acting for and in their behalf primarily from using the name “Local 369.”
Defendants’ exception is predicated (1) upon the contention that this action involves a labor dispute or a dispute concerning collective bargaining, jurisdiction whereof is vested exclusively in the National Labor Relations Board under the Labor Management Relations Act, 29 U.S. C.A. §§ 141-159, and (2) that injunctive *269 relief is prohibited under the provisions of LSA-R.S. 23:841 et seq. The position of the plaintiff is that neither a labor dispute nor collective bargaining is involved but that the action involves only a property right of the plaintiffs, protection of which is sought in this proceeding, and that, as a consequence, neither the aforesaid federal act nor the state statute has any application, whereas defendants claim the subject-matter of this litigation has been held to come within a field pre-empted by the aforesaid federal statute and consequently the court is without jurisdiction. It is now well established, however, and it is conceded by plaintiffs, that in matters or activities either protected or prohibited by the provisions of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 141 et seq.) the jurisdiction of the courts has been pre-empted and the primary jurisdiction vested in the National Labor Relations Board under the authority conferred by the aforesaid statute. Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480-484, 99 L.Ed. 546; Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776, (A.F.L.), 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Miss. Valley Elec. Co. v. General Truck Drivers etc., 229 La. 37, 85 So.2d 22.
First logically for consideration is the subject-matter of plaintiffs’ complaint and, secondly, whether such matter, or matters, may be reasonably deemed to come within either the protection or prohibition of the Labor Management Relations Act. For ascertainment of the nature of this issue, reference must be first made to plaintiffs’ petition. From this it would appear that petitioners’ Local 369, Bakery and Confectionery Workers International Union of America, as an unincorporated association chartered as a subordinate affiliate local union of the Bakery Confectionery Workers International Union of America, has existed for more than 30 years and is well known in this area under and by the designation as “Local 369” of the Bakery and Confectionery Workers; that the International Union under which plaintiffs’ Local is governed has a membership exceeding 150,000 and is domiciled in the City of Washington; that under the authority of the provisions of the constitution of the International Union the former officers of the aforesaid Local were superseded by one of petitioners, A. L. Roberts, as Special Trustee; that the defendants, two of whom are former officers of plaintiffs’ local, superseded by the aforesaid Special Trustee, while officers or members thereof, conspired to effect a dissolution of Local 369 and subsequently organized and have become affiliated with a newly organized union known as the American Bakery and Confectionery Workers International Union, AFL-CIO, which has also been designated Local 369.
For these reasons plaintiffs assert that their Local 369, as well as its members and representatives, has a property right in and to the use of the name “Local 369” and all the derivations thereof, which have been acquired by long and constant use and at great cost and expense. This name and number the defendant Union is alleged to have appropriated to its own use and that of its officers and members.
It could hardly be disputed there is a property right in a name used over a considerable period of time in which business has been conducted and under which good will and reputation have been established. There are instances where trade names have acquired a secondary meaning so closely in the mind of the public as applying to one business or to one product that its use by competitors for the purposes of unfair competition would be prevented by equitable means of injunction. Speaker v. Shler Co., 7 Cir., 87 F.2d 985. Where a trade name has acquired such significance in the minds of the public as applying to one business, equity will restrain the use of a name so similar as to confuse and mislead the public to the first user’s injury. It is not necessary, however, that the second user employing the name which interferes with *270 another’s prior right should have adopted such name with the intent to deceive the public or to injure the other. The consequences, and not the motive, are controlling. Household Finance Corp. v. General Household Credit Corp., D.C., 49 F.Supp. 541. See also Huth v. Rosenzweig, La.App., 27 So.2d 742, 744.
Applicable is the general rule stated in 4 Am.Jur., p. 479, “Associations and Clubs”, § 37:
“The prevailing doctrine is that an unincorporated benevolent, fraternal, or social organization is entitled to protection against the use of its name by another organization and may resort to injunctive relief to restrain the use of its name by others, unless a right is lost by acquiescence and laches.
“ * * * Not even seceders from the parent body may thus usurp the name of the unincorporated society.”
It was also stated:
“ * * * an association may enjoin the use or appropriation of its name or insignia.” 4 Am.Jur., p. 478, “Associations and Clubs”, § 36.
The jurisprudence in Louisiana is substantially the same. For instance, in Marcev v. Mandich, 158 La. 15, 18, 103 So. 389, 390, wherein the owner of a restaurant and . . •» cafe business, which he had operated for a number of years under the name of “Marble Hall Branch” at 802 North Rampart Street in New Orleans, sought an injunction against the defendants from conducting a similar business two blocks down the street under the name of “Marble Hall Branch No. 3”, the court stated:
“It is unnecessary to cite authority, of which there is no end, holding that trade-names will be protected against unfair use, simulation, or imitation.”
Likewise, in Yellow Cab Co. of New Orleans, Inc., v. Jones, 156 La. 837, 838, 101 So. 216, 217, the plaintiff instituted an action to enjoin and prohibit defendant from operating a yellow cab for the purpose of unfair trade competition. In affirming a judgment granting an injunction, the court stated:
“While unfairness and fraud is the basis of the action, it is not always required that there should be a malicious purpose to injure, but the question may be determined on the presumption that every person must be understood to have intended to do and abide by that which is the natural and probable conduct of his own act deliberately done. Undoubtedly the resemblance and similarity between the cab of defendant and the cabs of the plaintiff company tended to deceive the public into the belief that the taxicab of defendant was one of plaintiff’s taxicabs. In three known instances the public was misled, and to permit defendant to continue to operate his cab would lead to further confusion and injury to plaintiff’s business.
“It is true, as a general proposition of law, that there is no exclusive property in color. That, however, is not the present issue. The question to be determined here is: Has the plaintiff company so far established a trade-name in the words ‘Yellow cab,’ ‘Yellow Cab Company,’ and the colors, style, design, form, and dress as they are combined and used on its taxicabs to invoke the equitable process of injunction to protect it against resemblances and imitations designed and tending to deceive and mislead the public and to deprive plaintiff of the profits of its business? We think it has. See Taxi Operating Co. v. Martin, cited supra, and authorities cited; New England Awl Co. v. Marlborough Awl Co., 168 Mass. 154, 46 N.E. 386, 60 Am.St.Rep. 377”.
To the same effect is the holding in New Orleans Checker Cabs, Inc., v. Mumphrey, 205 La. 1083, 18 So.2d 629, 633. There the *271 contest was over the right to use the .trade name and emblem of the “Checker Cabs” in New Orleans. In upholding the right of one whose claim was based on priority of appropriation, the court said:
“The law’s protection against unfair competition by the use of another’s trade name rests upon the deceit or fraud which the newcomer in the business practices, — not only upon the one already established in the business but also upon the public. 63 C.J. p. 323. In such cases priority of appropriation of the trade name determines the question as to which one of the conflicting claimants is entitled to use the trade name. 63 C.J. p. 340; Handy v. Commander, 49 La.Ann. 1119, 22 So. 230; Paducah Distilleries Co. v. Crescent Mfg. Co., 6 Orleans App. 151. In Handy v. Commander it was said that the right to the exclusive use of a trademark was ‘founded (exclusively) on priority of appropriation’.
“We concur in the finding of the judge who tried this case that Walter Mumphrey had the so-called priority of appropriation of the trade name ‘Checker Cabs’, and that the use of the name and emblem by W. C. Pope and the New Orleans Checker Cabs, Inc., was unfair competition; hence we conclude that the judgment appealed from is correct.”
Where defendant had sold a real estate business known as “Del Bondio, Real Estate” conducted in New Orleans and thereafter engaged in the real estate business in the name of “Del Bondio Company, Real Estate”, a name very similar to which the plaintiff had acquired exclusive use under his purchase, the court, in Albrecht v. Del Bondio, 188 La. 502, 177 So. 587, 589, held:
“ ‘An injunction lies to restrain the simulation and use by one corporation of the name of a prior corporation which tends to create confusion, and to enable the later corporation to obtain, by reason of the similarity of names, the business of the prior one.’ ”
In this connection, plaintiffs allege that the wrongful appropriation by defendants of the identical local union No. 369, which, allegedly constitutes an identifying portion of its name, has confused and will continue to confuse, and was so calculated to confuse, the members of plaintiffs’ Local 369 and of its International Union, the community at large, and all those who have business relations with it, including employers, banks, newspapers and the general public, with the result that many persons and organizations have been and will continue to be deceived as a result thereof, causing great confusion, uncertainty and deception, and operating to induce persons to join or deal with the defendant local union in the belief that said local union is the same or successor to plaintiffs’ Local 369, all of which, it is alleged, has resulted and will result in irreparable injury to plaintiffs, the members of its Local 369, and its International Union, with the ultimate purpose in view of effecting a transfer of the cash, property and other assets of plaintiffs’ local and its members to the defendants.
The allegations of plaintiffs’ petitions make it clear that the act complained of is an alleged misappropriation and wrongful use of the name and identification of plaintiffs’ Local 369.
Whether the object or objects of this action encompass matters protected or prohibited by the provisions of the Labor Employment Relations Act can only be determined by reference to those provisions-For instance:
“It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of *272 full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.” 29 U.S.C.A. § 151, National Labor Relations Act, § 1, Labor Management Relations Act, § 101.
Rights of employees to self-organization, and to form, join or assist labor organizations, to bargain collectively through representatives of their choice, and to engage in other concerted activities for their mutual aid or protection, or to refrain from any or all of such activities, are conferred by the statute. 29 U.S.C.A. § 157.
If this case involved a matter of collective bargaining or labor dispute, it would come within the federal statute. However, no question of a collective bargaining or of a labor dispute is involved — merely a property right, such as would exist should a group of bankers organize a banking institution and attempt to appropriate the name of an existing bank. Merely because a controversy exists between the locals of two labor organizations, it would not necessarily follow there would exist a labor dispute, unless there are other qualifying factors, such as terms or conditions of employment. No one could accurately say that a dispute between two employees of the same employer over a right-of-way, division line of property or some other private matter would be a labor dispute, because the terms or conditions of employment would not be involved.
In Columbia River Packers Association, Inc. v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 521, 86 L.Ed. 750, an injunction was sought on the theory that defendants were acting in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note. The defendants took the position that the case involved a labor dispute and that under the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. an injunction could not issue. The facts are that plaintiffs owned and operated plants for the processing and canning of fish. The defendants were associated as the Pacific Coast Fishermen’s Union, which acted as a collective bargaining agency in the sale of fish by its members. The dispute arose regarding the terms and conditions under which defendants sold fish to plaintiffs. It was held that the case did not involve a labor dispute. Appropriate here is the observation made by the Supreme Court, which we quote:
“We think that the court below was in error in holding this controversy a ‘labor dispute’ within the meaning of the Norris-LaGuardia Act. That a dispute among businessmen over the terms of a contract for the sale of fish is something different from a ‘controversy concerning terms or conditions of employment, or concerning the association * * * of persons * * * seeking to arrange terms or conditions of employment’ * * * calls for no extended discussion. This definition and the stated public policy of the Act — aid to ‘the individual unorganized worker * * * commonly helpless * * * to obtain acceptable terms and conditions of employment’ and protection of the worker ‘from the interference, restraint, or coercion of employers of labor’ * * *■ — make it clear that the attention of Congress was focused upon disputes affecting the employer-employee relationship, and that the Act was not intended to have application to disputes over the sale of commodities.
“We recognize that by the terms of the statute there may be a ‘labor dispute’ where the disputants do not stand in the proximate relation of employer and employee. But the statutory classification, however broad, of parties and circumstances to which a ‘labor dispute’ may relate does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing.”
*273 In the instant case the conclusion reached by this court is that this action involves a property right- — -it does not involve an employer-employee relationship, nor any labor dispute, nor any bargaining agreement or agency as such, and cannot be reasonably deemed to come within the provisions of the Labor Management Relations Act, nor does it come within any protection or prohibition of said Act.
Neither does this action involve matters concerning which injunctions are prohibited under the statutes of this State, (LSA-R.S. 23:841), such as becoming or remaining a member of any labor organization, giving publicity to or communicating information regarding the existence of or the facts involved in any dispute, assembling peaceably to do, or to organize to do, any of the acts specified, or to promote any lawful interest, or of advising or giving notice of any intention to do any of said acts. Neither does the controversy involve any individual workman as to his freedom of association, self-organization and designation of representatives of his choice to negotiate the terms and conditions of his employment, nor does it involve or grow out of any labor dispute, nor does it concern the association of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment.
Should it be contended that plaintiffs’ petitions, in addition to the matters hereinabove described, incidentally include matters properly coming within the jurisdiction of the National Labor Relations Board, such would not be sufficient to deprive the courts of jurisdiction of the primary subject-matter involved. Neither would this ruling affect the authority of the Board in regard to such incidental matters, nor could defendants’ rights be prejudiced thereby as, on the trial of the case, appropriate objections may be, and no doubt would be, urged to matters in which the court was without jurisdiction. It may be here emphasized that in this action the right of the defendants to organize a separate and distinct union is neither questioned nor involved, nor is any labor dispute, nor any bargaining agency, nor the interpretation of any labor contract or agreement.
We, therefore, find that neither the Labor Management Relations Act nor the Louisiana statute is applicable to the facts as alleged to exist. It, therefore, follows that the ruling complained of was erroneous and must be reversed.
For the reasons herein assigned, the judgment appealed is annulled, avoided, reversed and set aside and, accordingly, it is now ordered that the plea to the jurisdiction of the court ratione materiae be and the same is hereby overruled, and this cause is remanded to the First Judicial District Court in and for Caddo Parish, Louisiana, for further proceedings consistent with the views herein expressed and in accordance with law, the defendants-appel-lees to pay the costs of appeal; all other costs to await final determination of the case.
Reversed and remanded.