SAMUEL, Judge.
This case, an action for an injunction in a labor dispute, is before us on two consolidated applications for remedial writs.
Petitioner is the recognized collective bargaining agent for hourly paid employees at the Shell Oil Company Norco Refinery. The named defendants were Shell Oil Company, six hourly paid employees of that company, and the two plant managers of the company’s refinery and chemical plants at Norco. After the signing of a temporary restraining order, but before the trial of the rule to show cause why a preliminary injunction should not issue, petitioner dismissed Shell Oil Company and the two plant managers from the suit.
Petitioner is on strike and seeks a preliminary injunction against the six remaining defendants prohibiting them from returning or attempting to return to the premises of Shell Oil Company for the purpose of engaging in work for that employer. The cause of action is set out in Articles 8 *103 and 9 of the petition, which articles read as follows:
“8.
“On or about Monday, October IS, 1962, at the West gate of the Oil Refinery petitioner was engaged in picketing. At said time and place defendants Earl Roddy and Etienne Millet came to the gate and attempted to go through said gate for the purpose of going back to work. At the time said defendants came to said gate they engaged in conversation with the pickets in connection with their announced intention of returning to work in a manner which constituted a deliberate attempt on the part of said defendants to incite and provoke violence.
“9.
“The defendants Henry Dufresne, A. J. Richard, K. J. Weber and Eli S. Guidry at said time were in the near vicinity and upon being questioned in connection with their interest in the acts of defendants, Millet and Roddy, advised that they, too were attempting to return to work and if Millet and Roddy did not go through the picket lines the defendants would ‘get better organized and go in later’. Said conduct and assertions constitute a deliberate attempt on the part of said defendants to incite and provoke violence.”
Trial on the rule to show cause why the preliminary injunction should not issue resulted in the following judgment, rendered and signed on October 30, 1962, and pertinent findings of fact and statement of law by the trial judge:
“Clearly then, it appears that neither employer or employee can negotiate one with the other to the disregard of the Union. And a return to work during a strike would be negotiation as to wages and conditions of employment that form the crux of the labor dispute between the Union and Shell.
“This Court must hold that the right of the Union to bargain with the employer appears exclusive and to disrupt this status quo before a determination of such rights before the N.L.R.B. would cause irreparable injury to the Union and pose an imminent threat to peace and order.
“The evidence satisfies this Court that defendants, Roddy, Millet, Dufresne and Richard made overt acts constituting an attempt to return to work. Such acts were not sufficiently established as to Guidry and Weber.
“However, in aid of its jurisdiction to prevent violence and breach of peace and order this Court is of the opinion that the status quo of the union and all hourly employees represented by the Union must be maintained and since this action meets all requirements of a class action the Court will treat it as such: C.C.P. Arts. 591, 592, 593.
“Again, while the defendants, Guidry and Weber, as hourly employees, are contained within the scope of this ruling, nevertheless they were specifically named and charged with certain alleged actions that were not proven. Consequently, they, as hourly paid employees represented by the Union and not involved in this back to work action, are entitled to recover attorney fees from their collective bargaining agents funds as representatives of a class in whose favor the Court rules See C.C.P. Art. 595 and C.C.P. Art. 3608.
“Accordingly, in aid of the Court’s jurisdiction, to prevent an imminent threat to peace and order, and to maintain the status quo of the parties until their rights and duties can be established by the National Labor. Relations Board, Earl Roddy, Etienne Millet, Achille J. Richard, Henry Dufresne, and all hourly employees of Shell Oil Company’s Norco Refinery are restrained, enjoined and prohibited from *104 returning to or attempting to return to the Norco Refinery premises for the purpose of engaging in work for Shell Oil Company until further orders ■of this court.”
“IT is further ordered that the parties •file an application with the N.L.R.B. for a determination of the rights and duties of each the hourly paid employees and the Union pertinent to the issue herein concerned and make return of such determination to this Court.
“It is further ordered that there be judgment herein in favor of Eli S. Guidry and K. J. Weber and against Independent Oil & Chemical Workers’ Union of Louisiana in the sum of $100.00 each as attorney fees.”
Shell Oil Company intervened in the suit after the rendition and signing of the above judgment, alleging it was an interested party adversely affected by the injunction which interfered with employer-employee relationships, and filed a rule to show cause why the injunction should not be dissolved. Three of the employee-defendants, Richard, Weber and Guidry, also filed a rule to dissolve and, in addition, filed an exception to the court’s jurisdiction, the latter on the ground that the National Labor Relations Board had exclusive jurisdiction to determine the questions involved.
By judgment signed on December 10, 1962, the trial court allowed the intervention of Shell Oil Company, maintained the exception to its jurisdiction, ordered all parties “to the National Labor Relations Board for determination of issues herein raised”, and restrained and enjoined all parties to maintain the status quo as of the beginning of the strike on August 18, 1962 until determination of their rights before the proper forum and return of such determination to the court, thus continuing in force and effect the preliminary injunction previously granted.
Shell Oil Company and the three excep-tors then applied to this court for writs of certiorari, prohibition and mandamus. Both applications were granted.
The only evidence offered in the case was the testimony of nine witnesses, four for petitioner and five of the defendants, taken during the trial of the rule to show cause why the preliminary injunction should not issue. That testimony reveals the following facts:
Petitioner went on strike against Shell on August 18, 1962, and was still on strike October IS, 1962. Shortly before 7 a. m. on the latter date two of the defendants, Earl Roddy and Etienne Millet, hourly paid employees of Shell for many years, attempted to return to work in Millet’s pick-up truck. They drove to an entrance to the plant known as the “west gate”, which entrance was being picketed, and stopped outside the entrance. There were either six or twelve strikers, some of whom were pickets, at the west gate. Petitioner’s witness says the smaller number; defendants say the larger. One of the pickets asked the two defendants where they were going and the latter answered that they were going to work. They were told that they were not going to work and the picket or pickets and other strikers pushed the small truck back. According to the defendants, one of the strikers attempted to open the truck door but it was locked. These defendants immediately left the scene, according again to their testimony, because they were afraid of violence. The truck and the two defendants were at the gate for a very short time, not exceeding a minute or two. The testimony of one of the petitioner’s witnesses, Lawrence W. Duhe, a picket at the west gate at the time the incident happened, and the only eye witness to that incident produced by petitioner, described the incident as follows:
“Q: How long did Mr. Millet stay at the Gate?
“A: A minute or less. It wasn’t very long.
*105 “Q: The other people come up either at the time Millet and Roddy were there or áfter?
“A: No, not while they were there.
“Q: After they left?
“A: As they start to back up they had some more boys start to walk towards the West Gate.
Actually the time that they were there, there were only six people at the gate, is that right ? a
Right.
Will you describe what happened, Mr. Duhe ? a
“A: In walking the gate, the picket —they drove up — ask them where they was going; they said they was going to work. The only thing I said ‘No,, you are not’. That’s when LeBlanc got on the truck and start to pushing the truck back. I had my hand on the hood but I just kept walking with the other picket in my hand.”
On cross examination Mr. Duhe stated that he was of the opinion that no one had the right to go back to work during the strike and that if someone did try to go back to work during that time there would probably be violence.
The only other incident testified to occurred on the same day, October 15, 1962, between 7 and 8 a. m. at or in front of an ice cream parlor in Norco about two blocks from the west gate. Two of petitioner’s witnesses, officers of the union, testified they had heard that an attempt was going to be made to return to work and that they talked about such a return to four of the defendants, Henry Dufresne, Achille J. Richard, K. J. Weber and Eli S. Guidry. According to the petitioner’s witnesses two of these four defendants told them they (the two defendants) intended to return to work in the future. The union officers talked to all four of the men seeking to dissuade them. But, again according f<? petitioner’s witnesses, two of these defend-ants, Dufresne and Weber, said that they' intended to organize themselves into a body' and cross the picket line to return to work.This testimony generally, and particularly that portion relative to organizing and returning to work, was denied by three of the defendants involved. The fourth defendant was not in court. In addition, two union officers testified that any attempt to cross the picket line to return to work would create violence.
The National Labor Relations Act (29 U.S.C.A. § 157) extends to employees the right to strike and picket, or refrain therefrom, and includes the right to work in the face of a strike and the right to abandon the strike and return to work; the right to return to work during a strike is protected by the act. Highway Truck Drivers & Helpers Local v. N. L. R. B., 107 U.S.App.D.C. 1, 273 F.2d 815; National Labor Rel. Bd. v. International Woodworkers, 5 Cir., 243 F.2d 745.
Generally a state court has no jurisdiction over an activity prohibited or protected, even arguably so, by the National Labor Relations Act. Ex Parte George, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133; Mississippi Valley Electric Co. v. General Truck Drivers, Etc., 229 La. 37, 85 So.2d 22. However, a state court does retain jurisdiction to maintain peace and order and to prevent or stop violence. Youngdahl v. Rainfair, 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151; Garner v. Teamsters, Chauffeurs and Helpers, Etc., 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228; Allen Bradley Local No. 1111, Etc. v. Wisconsin E. R. Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154; Douglas Public Service Corp. v. Gaspard, 225 La. 972, 74 So.2d 182.
In the instant case the trial court found that a return to work by the defendants or other hourly employees would be an imminent threat to peace and order and that violence would follow such a return under the circumstances here involved. However, *106 he found only what he said constituted an “overt” act to return to work; there is no finding that defendants’ actions were violent, reckless, illegal or conducted in a manner which could be considered as provocative of violence. The activities by the defendants appear to have been peaceful in every respect. And we are satisfied from all of the testimony that the violence which might occur as a result of an attempt to return to work would be violence on the part of and by the union members in preventing such a return.
Thus we are presented with the novel situation where those likely to cause violence in order to prevent the exercise of legal rights by others are protected by an injunction which itself prevents the others from exercising those legal rights in a proper manner. Nor does the injunction preserve the status quo. Prior to the injunction and the temporary restraining order the defendants and other hourly employees had the right to return to work whereas after the order and the injunction they were prevented from doing so.
We are of the opinion that the trial court was without jurisdiction to issue the injunction.
For the reasons assigned, that portion of the judgment rendered and signed on October 30, 1962, which restrains, enjoins and prohibits Earl Roddy, Etienne Millet, Achílle J. Richard, Henry Dufresne and all hourly employees of Shell Oil Company’s Norco Refinery from returning to or attempting to return to the Norco Refinery premises for the purpose of engaging in work for Shell Oil Company is reversed, the injunction is dissolved and the judgment is amended so as to delete therefrom the above mentioned portion thereof; it is further ordered that that portion of the judgment signed on December 10, 1962, which reads “All parties are restrained, enjoined and ordered to maintain the status quo of all parties as of the beginning of the strike on August 18, 1962, until determination of their rights are had before the proper forum and such determination is returned to this Court” is reversed, that order is annulled and that judgment is amended so as to delete therefrom the above mentioned portion thereof; and as thus amended, and in all other respects, said judgments are affirmed; petitioner to pay the cost of this appeal.
Reversed in part; amended and affirmed in part.