REGAN, Judge.
The plaintiffs, Earl J. Roddy and Etiene Millett, filed suit against the defendant, Independent Oil and Chemical Workers’ Union of Louisiana, endeavoring to recover the respective sums of $2,597.40 representing damages, in the form of lost wages, which they assert they incurred as a result of the unlawful actions of the defendant in barring their entrance into the Shell Oil Refinery in Norco, Louisiana, their source of employment.
The defendant answered and simply denied the foregoing allegations.
From a judgment of the lower court in favor of the defendant, the plaintiffs have prosecuted this appeal.
The record reveals that on August 18, 1962, the defendant union called a strike at the Shell Oil Refinery. When the strike occurred, both plaintiffs were on vacation. After they returned home, they learned that since they were non-union hourly workers they possessed the right to return to their jobs even though a strike existed at the plant.
On the morning of October 15, 1962, they endeavored to report to work. The plaintiffs were attired in work clothes and in possession of the proper employee identification when they drove up to the west gate of the plant (their normal point of entry) in Millett’s truck. Upon their arrival, they were met by several[1] pickets and other members of the defending union who were stationed in the immediate vicinity.
These men positioned themselves in the path of the truck, which the operator then brought to a stop. They were asked what their purpose was, and they replied that they were returning to work. Lawrence Duhe, one of the pickets, informed them that “nobody was going to work”. Durel LeBlanc, a union “observer”, stated to them that they would have to run over him in order to enter the plant. An effort to forcibly enter the track was made by one of the union men, but a locked door prevented the occurrence thereof. Thereafter, the truck was pushed away from the gate by the union men, and the plaintiffs then departed.[2]
Some time later, the defendant union filed suit against the Shell Oil Co. and the plaintiffs herein endeavoring to obtain the issuance of an injunction prohibiting the plaintiffs from returning or endeavoring to return to the premises of the Shell Oil Co. for the purpose of engaging in work for that employer. The district court issued the *287 injunction and restrained the plaintiffs herein from returning to work. However, this court granted supervisory writs, dissolved the injunction, and reasoned that the plaintiffs possessed the right to return to their employment with the Shell Oil Company.
Before the strike terminated, one of the plaintiffs herein, Roddy, filed a charge against the union and was subsequently advised that the regional office of the National Labor Relations Board had decided that the actions of the defendant constituted an unfair labor practice under Section 7 of the National Labor Relations Act. The union was then forced to enter into a settlement whereby it agreed that:
“WE WILL NOT threaten to inflict, or inflict, bodily harm upon employees at the plant of SHELL OIL COMPANY, NORCO REFINERY, at Nor-co, Louisiana, in order to prevent them from crossing our picket lines, and we will not bar their ingress to, or egress from, said plant.
“WE WILL NOT, in any like or related manner restrain or coerce employees of SHELL OIL COMPANY, NORCO REFINERY, in the exercise of the rights guaranteed by Section 7 of the Act, as amended, including the right to refrain from any and all concerted activities.”
Section 7 of the National Labor Relations Act[3] extends to employees the right to strike and picket or to refrain therefrom with impunity. ■ It further includes the right to work in the face of a strike and the right to abandon the strike and return to work.[4] Therefore, it is obvious that the defendant violated the plaintiffs’ right to return to work by coercively preventing them from entering the west gate of the plant on the day in question.
Defendant, however, insists that the union did not engage in any tortious activity. It argues that the record does not reveal any acts of violence, threats of violence, or any utterance which would have the effect of causing the plaintiffs to be placed in reasonable fear of their safety. A cursory examination of the record, however, proves this argument to be without merit. The statements made by the union men at the gate to the effect that no one would return to work and that the plaintiffs would have to run over them in order to gain access to the plant clearly implied that some form of violence would result if the plaintiffs exerted a more concerted effort to return to work. In addition thereto, the attempt by one of the union men to open the locked door of the truck together with the physical removal of the truck from the vicinity of the gate by the union men can only be classified as acts of violence. Therefore, we are of the inevitable opinion that the defendant union was guilty of tortious conduct in preventing the plaintiffs from entering the refinery so as to return to work.
The defendant alternatively contends that the plaintiffs omitted to prove that they sustained any damages as the result of the actions of the union men stationed near the gate. In essence, the defendant insists that the plaintiffs failed to prove that work was available for them if they had successfully gained entry into the refinery.
The testimony, relative to this aspect of the case, was elicited from J. D. Walker, the manager of personnel and public relations for Shell Oil Company. He related that both plaintiffs were classified as first class craftsmen and their hourly rate was $3.28. He further revealed that if the plaintiffs had returned to work on the day in question, they would have been subject to a five percent (5%) wage increase retroactive to the day that they returned to work. *288 However, when plaintiffs’ counsel began to interrogate Walker relative to the availability of work for the plaintiffs if they had returned to their employment, he was prevented from eliciting this evidence as the result of an objection interposed by counsel -for the defendant. Defendant’s counsel now contends, however, that the absence of this evidence constitutes a fatal defect in the plaintiffs’ case. ■
 An analysis of the record reveals that while the plaintiffs proved the rate of pay which they would have received had they returned to work, they did not specifically prove that a job was available to them at that time. Of course, the testimony of Walker implies that a job was available, and it appears therefrom that if the defendant had not interposed an objection to the line of questioning referred to herein above, Walker may have stated with legal certainty that work, and how much thereof, was available to the plaintiffs. In this connection, we also take judicial cognizance of the fact that in the prior injunction suit filed by the .defendant[5] the Shell Oil Company intervened therein and sought the dissolution of the injunction predicated on the contention that it interfered with employer-employee relationships. However, we are unable to conclude from either the implications, inferences, or the foregoing facts that the plaintiffs have proven, with that certainty that the law requires that jobs were available for them when they arrived at the plant on the'morning of October IS, 1962. Therefore, we are of the opinion that the ends of justice require that the case be remanded for the purpose of establishing as a fact whether work, and how much thereof, was available to the plaintiffs if they had successfully returned to their jobs on the morning of October 15, 1962.
 ■ The plaintiffs also request damages in the respective amounts of $10,000.00 for harassment and humiliation which they assert was incurred by them as a result of the actions of the defendant union. They contend that they were followed while pursuing their daily chores, that they received vulgar and obscene articles in the mail, and that they were harassed at all hours of the day and night through the medium of the telephone. An analysis of the record, however, reveals that the plaintiffs have failed to prove by virtue of a sufficient preponderance of the evidence that the harassment complained of emanated from the defendant. Assumptions and presumptions of fact will not serve as á substitute for proving a civil case with reasonable probability. All of the phone calls were anonymous, as were the obscene articles received in the mail. Moreover, the evidence indicating that the plaintiffs may have been followed by members of the defendant union does not, of itself, establish a basis upon which we can predicate an award of damages. Therefore, we conclude that the plaintiffs are not entitled to recover any damages emanating from this aspect of the case.
For the foregoing reasons, the judgment of the lower court is hereby reversed, and the case is remanded to the district court for the limited purpose of determining whether work, and how much thereof, was available to the plaintiffs if they had returned to their employment on October 15, 1962, and such judgment as may be warranted by the evidence so adduced shall be rendered by the trial judge.
The defendant is to pay all costs of this appeal, and all other costs are to await the final determination hereof.
Reversed and remanded.

. The exact number of union men at the gate is in dispute.

. The union disputes that the truck was pushed away from the gate. They insist that it was backed away under its own power. However, the testimony adduced in a prior injunction suit arising out of tbis occurrence by the same union men involved herein clearly establishes that the truck was pushed and that it was not voluntarily reversed by Millett. See Independent Oil and Chemical Workers’ Union v. Shell Oil Co., La.App., 150 So.2d 102 (1963).

. 29 U.S.C. § 157.

. Highway Truckdrivers and Helpers Local, etc. v. N. L. R. B., 107 U.S.App. D.C. 1, 273 F.2d 815 (1959); N. L. R. B. v. International Woodworkers, etc., 243 F.2d 745 (1957).

. Independent Oil and Chemical Workers Union v. Shell Oil Co., La.App., 150 So.2d 102 (1963).