HALL, Judge.
This suit was originally instituted by plaintiffs on March 4, 1963 against the defendant Union for damages allegedly incurred by them as the result of the unlawful actions of defendant in barring their entrance into the Shell Oil Refinery in Norco, Louisiana, where they were employed. Trial of the suit resulted in a judgment in defendant’s favor dismissing plaintiffs’ action.
Plaintiffs took a devolutive appeal from this judgment and on December 6, 1965 this Court reversed the District Court on the question of liability and remanded the case “for the limited purpose of determining whether work, and how much thereof, was available to the plaintiffs if they had returned to their employment on October 15, 1962, and such judgment as may be warranted by the evidence so adduced shall be rendered by the trial judge.” (See the Court’s opinion, 181 So.2d 285.)
On December 14, 1965 the District Judge signed an order fixing the case for trial on October 6, 1966 on the merits of the remand.
On October 4, 1966 the defendant Union filed a “Motion to Test Validity of Appeal Bond,” which was fixed for hearing on October 6, 1966, the same day as the trial on the merits. The motion was argued, and judgment thereon was reserved by the District Judge until plaintiffs, who were caught by surprise, could file a memorandum in opposition thereto. The trial proceeded on the merits on October 6, 1966 within the limited scope of the remand.
On October 25,, 1966 plaintiffs filed a cash bond in the form of a cashier’s check for the purpose of curing any defect in the original appeal bond which was under attack.
On February 20, 1967 the District Judge rendered judgment in which he dismissed defendant’s motion attacking the appeal bond and awarded damages in favor of each of the plaintiffs in the sum of $2,-479.50.
In his written “Reasons for Judgment” the District Judge discussed at length defendant’s motion to test the validity of the appeal bond and closed this discussion by saying :
“As an anticlimax, this Court must further hold that the invalid bond herein has been cured by the timely posting of a good and sufficient bond in accordance with C.C.P. Art. 5124 and the motion must be dismissed.”
Defendant prosecutes this appeal from the judgment of February 20, 1967.
Defendant’s principal contention is that the joint bond of appeal furnished by the two plaintiffs on their original appeal to this Court was defective in that it was signed by plaintiff, Millet, as principal and plaintiff, Roddy, as surety; that under the law one appellant cannot be surety for the other; that having an incompetent surety is tantamount to having no surety at all; and that the bond was so defective as to render it actually non-existent. Defendant further contends that plaintiffs’' appeal to this Court was not perfected by the filing of the purported bond which amounted to no bond at all, consequently this Court was without jurisdiction to consider the appeal and its judgment reported in 181 So.2d 285 is void and the original opinion of the District Court rejecting plaintiffs’ demands is now final.
Defendant’s whole argument is based on the premise that the original bond furnished by plaintiffs was no bond at all. If this were true the Supreme Court’s decision in Orrell v. Southern Farm Bureau Casualty Ins. Company, 248 La. 576, 180 So.2d 710, would be decisive of the issue here presented. In that case the appellants furnished no appeal bond whatever.
In the instant case an appeal' bond was timely filed by the plaintiff s-appellants.
*116 While the appeal bond filed by them was invalid because signed by an incompetent surety it was in our opinion nevertheless a bond, the validity of which was subject to being cured.
Article 2088 of the Code of Civil Procedure (LSA-C.C.P. 2088) as amended by Act No. 4 of 1964,[1] reads in part as follows:
“Art. 2088. Divesting of jurisdiction of the Trial Court
“The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the timely filing of the appeal bond, or if no bond is required, on the granting of the order of appeal. Thereafter, the trial court has no jurisdiction over these matters except to: * * *
“(5) Test the solvency of the surety on the appeal bond as of its date of filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124 and 5126 * * * ” (emphasis supplied)
LSA-C.C.P. Arts. 5123 and 5124 referred to in Article 2088 (Article 5126 also referred to therein is not pertinent) read in part as follows:
“Art. 5123. Testing sufficiency and validity of bond
“Any person in interest wishing to test the sufficiency, solvency of the surety, or validity of a bond furnished as security in a judicial proceeding shall rule the party furnishing the bond into the trial court in which the proceeding was brought to show cause why the bond should not be decreed insufficient or invalid, and why the order, judgment, writ, mandate, or process conditioned on the furnishing of security should not be set aside or dissolved. * * * ” (emphasis supplied)
“Art. 5124. Furnishing new or supplemental bond to correct defects of original
“Within four days, exclusive of legal holidays, of the rendition of judgment holding the original bond insufficient or invalid, or at any time if no rule to test the original bond has been filed, the party furnishing it may correct any defects therein by furnishing a new or supplemental bond, with either the same surety if solvent, or a new or additional surety.
“The new or supplemental bond is retroactive -to the date the original bond was furnished, and maintains in effect the order, judgment, writ, mandate, or process conditioned on the furnishing of security. * * * ” (Emphasis supplied)
Also pertinent hereto is LSA-C.C.P. Art. 5125 which reads as follows:
“Art. 5125. Insufficiency or invalidity of bond; effect on orders or judgments; appeal from order for supplemental bond
“No appeal, order, judgment, writ, mandate, or process conditioned on the furnishing of security may be dismissed, set aside, or dissolved on the ground that the bond furnished is insufficient or invalid urtless the party who furnished it is afforded an opportunity to furnish a new or supplemental bond, as provided in Articles 5124 and 5126.
“No suspensive appeal is allowed from an order or ruling of a trial court requiring or permitting a new or supplemental bond to be furnished as provided in Articles 5124 and 5126.” (emphasis supplied)
*117 We are of the opinion (a) that the appeal bond furnished by plaintiffs in connection with the original appeal was timely furnished and although it was invalid because the surety was incompetent it was nevertheless a bond, (b) that the above quoted articles of the Code of Civil Procedure should be read together, (c) that the Trial Court was vested with jurisdiction to test the validity of the bond (see LSA-C.C.P. Art. 5123 and the Redactors’ Comment (d) under LSA-C.C.P. Art. 2088; see also Tracy v. Dufrene, 240 La. 232, 121 So.2d 843), (d) that plaintiffs’ original appeal could not be set aside or voided without giving plaintiffs an opportunity to furnish a valid bond (LSA-C.C.P. Art. 5125), and (e) that plaintiffs timely furnished a valid bond which cured all of the defects of the original bond and that the new bond was retroactive to the date of the original bond (LSA-C.C.P. Art. 5124).
For the foreging reasons we are of the opinion that the District Judge properly dismissed defendant-appellant’s “Motion to Test Validity of Appeal Bond.”
On the merits of the restricted remand plaintiffs adduced the testimony of Mr. E. L. Raulston, Assistant Manager, Personnel and Industrial Relations, of the Shell Oil Company’s Norco Refinery. Mr. Raulston testified that if plaintiffs could have returned to work on October 15, 1962 they would have been given work and allowed to resume their employment at their regular rate of $3.28 per hour; that a 5% increase raising the wage to $3,444 per hour was offered to the Union on December 15, 1962 and that plaintiffs would have been entitled to this increase as of the date of such offer; that eight hours of work per day five days per week was available to plaintiffs. Mr. Raulston further testified that the strike terminated on February 17, 1963.
The District Judge rendered judgment in favor of each plaintiff in the sum of $2,-479.50 which he calculated at the rate of $27.55 per day for the ninety working days between October 15, 1962 and February 17, 1963. In other words he calculated that they were entitled to pay for the whole period at the increased rate of $3,444 per hour. However the most that each could have earned would have been $2,420.55 calculated as follows: $3.28 per hour or $26.24 per day for the forty-five working days between October 15, 1962 and December 15, 1962, and $3,444 per hour or $27.55 per day for the forty-five working days between December 15, 1962 and February 17, 1963.
Defendant contends however that neither plaintiff is entitled to receive any damages for wages lost during the period the injunction was in effect (see our original opinion herein, 181 So.2d 285, 286, 287). The injunction (later dissolved by this Court) was obtained by the defendant and defendant cannot profit by its own wrongful action. Moreover defendant’s contention is not within the scope of the limited remand.
Defendant additionally contends that plaintiffs did nothing to minimize their damages. The testimony on remand reveals that plaintiff, Millet, endeavored to find other employment during the strike and did obtain employment for a short while earning a total of $90.00 but the defendant Union applied pressure on his employer and caused him to be fired. Plaintiff, Roddy, did not seek other employment but he had filed a charge against the Union with the regional office of the National Labor Relations Board and knew what happened to Millet and doubtless any effort on his part to obtain other work would have been aborted by the defendant’s actions.
Defendant cannot interfere with plaintiffs’ employment by others and then be heard to say plaintiffs failed to minimize the damages.
For the foregoing reasons the judgment appealed from is amended by reducing the damages awarded to Etienne P. *118 Millet from $2,479.50 to the sum of $2,-330.55, and by reducing the damages awarded to Earl J. Roddy from $2,479.50 to the sum of $2,420.55, and as so amended and in all other respects the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Amended and affirmed.

. The amendment became effective on July 29, 1964, and was in effect when the order of appeal was signed on September 14, 1964.