SCHOTT, Judge.
At issue in this case is the liability of Norco Local 4-750 Oil, Chemical & Atomic Workers International Union (the Local) to plaintiffs for the amount of a judgment they previously obtained against Independent Oil & Chemical Workers Union of Louisiana (the Independent).
The protracted nature of this litigation can best be illustrated by considering that it began when plaintiffs filed suit on March 4, 1963, and it is now on appeal to this court for the fifth time. The case can best be understood without needless repetition by reference to the earlier opinions of this court, which will be cited hereafter.
Plaintiffs’ original suit against the Independent was dismissed by the trial court but that judgment was reversed by this court and remanded for further evidence in December, 1965, 181 So.2d 285. After trial on remand plaintiffs prevailed and on appeal their judgment was affirmed in January, 1968, 206 So.2d 114. In August, 1968, plaintiffs sought by summary proceedings to amend their judgment against the Independent to substitute as the judgment debt- or, the Local. The trial judge dismissed the motion and this judgment was affirmed on appeal in April, 1970, 233 So.2d 714. It was held that summary proceedings were not available to plaintiffs to substitute a new judgment debtor for the judgment debtor named in the suit after the judgment became final and definitive.
On April 1, 1975, plaintiffs brought suit against the Local seeking judgment in their favor for the amounts for which the Independent had been cast in the earlier judgment, including legal interest from March 4, 1963, until paid, and for all costs of all proceedings. In their petition they alleged that their original judgment against the Independent had not been satisfied; on March 1,1964, an affiliation agreement was entered into between the Independent and the Local with the result that the name of the Independent was changed to that of the Local; the officers and members of both entities were the same, all property both movable and immovable owned by the Independent prior to the affiliation agreement and name change continued to be owned by the Local; the purpose of each entity was the same; and the Local is the same legal entity as the Independent, the only change being in name.
Plaintiffs previously moved for and obtained a summary judgment against the Local, but on May 18, 1976, this court reversed that summary judgment on the ground that there were genuine issues of material fact raised in an affidavit filed by the Local in response to the motion for summary judgment, 332 So.2d 576.
The case has now been tried on the merits with the result that plaintiffs Millet and Roddy have obtained judgment for $2,330.55 and $2,420.55 respectively against the Local with legal interest from March 4, 1963, in addition to all costs. From that judgment the Local has appealed.
At the trial of the case plaintiffs offered in evidence the entire record of the proceedings, and some other documents. Defendant’s evidence consisted of the testimony of Dale Dutt, an officer of the Local.
The key documents introduced and relied upon by plaintiffs are a donation of immovable property by the Independent to the Local and pleadings filed by the Local in Civil Action No. 14518 on the docket of the United States District Court for the Eastern District of Louisiana, entitled “Independent Oil & Chemical Workers’ Union of Louisiana v. Shell Oil Company, Norco Refinery."
Turning first to the donation, this was an authentic act passed on August 20, 1964, in which the Independent donated to the Local real estate in St. Charles Parish. It recites that the Independent is a non-profit corporation organized in September, 1962, and that the Local is another non-profit corporation organized in August, 1964. The two corporations were represented by their presidents who were duly authorized by resolutions of the respective boards of directors of the corporations.
*221 ’ The pleadings filed by the Local on June 29, 1965, in federal court consisted of a motion, a memorandum and an affidavit by Jerry B. Murray, the Local’s president. The motion, entitled “Motion to Change Name of Plaintiff” contained the following statement:
“That since the bringing of this action wherein the Independent Oil & Chemical Workers of Louisiana was named plaintiff, the name of the plaintiff has been changed to Oil, Chemical & Atomic Workers International Union, Local 4-750 and in its latter name has succeeded to all rights and properties held under its former name.”
In his affidavit Murray recited: On March 1,1964, the Independent entered into an “affiliation agreement” with the Oil, Chemical & Atomic Workers International Union, A.P.L.-C.I.O. with the result that the name of the Independent became “Independent Oil, Chemical & Atomic Workers Union of Louisiana affiliated with the Oil, Chemical & Atomic Workers International Union,” the officers and members of the Independent were the same as the affiliated Independent. All property, movable and immovable, owned by the Independent continued to be owned by the affiliated Independent. The purposes remained the same. The officers and stewards continued to administer the contract with Shell Oil Company and the activities continued to be the same as they had been with the Independent. On July 8, 1964, a local charter for Norco Local 4-750 was obtained from the International Union with the results that the officers of the Independent affiliate became the officers of the Local performing the same functions they had performed previously, the membership was identical, all property, movable and immovable, of the affiliated Independent became the property of the Local, including the union hall and bank accounts.
At the trial Dale Dutt testified: After the local was organized a petition for recognition as the bargaining agent for the employees at Shell Oil & Chemical Company was filed by the new union. A certification election was held and the result was that the new union became the bargaining agent for the oil workers but the chemical workers remained independent although both oil and chemical workers had theretofore belonged to the Independent Union. The only obligation assumed by the Local was the exercise of bargaining rights for the workers at the oil refinery.
The main thrust of plaintiffs’ case is that defendant is the same entity as their judgment debtor, i. e., only the name has changed. But plaintiffs’ own evidence, namely, the act of donation establishes that the Local and the Independent are separate non-profit corporations created on different dates. Thus, plaintiffs’ first argument fails. The Local cannot be considered the same entity as the Independent.
The next question is whether the Local is legally liable for the Independent’s debts by virtue of the “affiliation agreement.” Surely, by written contract between the Local and the Independent, the former could assume the latter’s debts to plaintiffs. LSA-C.C. Art. 2278(3). But the evidence does not even suggest that the “affiliation agreement” had this effect. On the contrary, the only evidence even touching upon the “affiliation agreement” was the affidavit of Murray to the effect that the Independent made an “affiliation agreement” on March 1, 1964, with the Oil, Chemical & Atomic Workers International Union, A.F.L.-C.I.O. According to the act of donation defendant, the Local, was not created until August 11,1964, so it was not even in existence when the “affiliation agreement” was made.
Although plaintiffs have not provided us with any authority which might afford a basis for the Local’s liability to them, we have considered the following principles stated in Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789 at 794 (1916):
“According to the consensus of judicial opinion in this country, a newly organized corporation is liable for the debts of an old one, to the business and property of which it has succeeded, where it is shown *222 that the succession was the result of a transaction entered into in fraud of the creditors of the old corporation, or that the circumstances attending the creation of the new, and its succession to the business and property of the old, were of such a character as to warrant the finding that the new, is merely a continuation of the old, corporation. The courts are also agreed that there can be no consolidation of corporations, and no merger of one into another, and particularly of a domestic into a foreign corporation, without legislative authority, general or specific, and the consent of all of the shareholders; that the properties of a corporation constitute a trust fund for the payment of its debts; and that, where there has been a misappropriation of such funds, or (according to the better opinion, as we think) the corporation has been devested thereof by consolidation, merger, reorganization, or ‘reincarnation,’ not only may the fund be followed, by the aid of equity, for the benefit of the creditor, but he may recover, in an action at law, against the corporation which has taken over such find, with the business of his debtor.
There is not the same concurrence of opinion upon the question whether, or under what circumstance, the mere absorption by one corporation of the property and business of another operates as a merger of such other corporation, or subjects the property so absorbed to the claims of its creditors, or the absorbing corporation to liability for such claims. In the case of a sale, in good faith, of the property and business of a strictly private corporation, duly authorized by its shareholders, to a third person, for an adequate consideration, the property would no doubt pass free of incumbrance, and the creditors would be relegated to the proceeds in the hands of the debtor corporation; but, where the purchaser is a new corporation, composed of the same shareholders as the old, the transaction, in no manner, affects the rights of the creditors of the old corporation, who may proceed for recovery of the amounts due them against either corporation, or both; and that, whether the claims be founded in contract or tort, since the real debtor, though represented by two corporations instead of one, remains the same, in contemplation of law.” (Emphasis supplied)
This was a tort suit arising out of a gas explosion against the old company and its successor company. All of the assets of the original company were transferred to the new company for “$1,000 and other good and valuable consideration.” It was the expressed intention of the parties “that the New Company shall take over and acquire the entire property and business of the Old Company as a going concern.” The management, ownership and employees of the old company remained virtually the same in the new.
The court found that evidence “discloses the earmarks of persons dealing with themselves, and threw upon them the burden of proving that it was, in fact, a sale, for adequate consideration, between different persons.” Holding that the new company failed to carry its burden, the court concluded:
“It is evident that, where the question at issue is whether the corporation executing, and the corporation receiving, the transfer, are controlled by the same persons, the same reasons exist for putting the burden of proof on them, as against an unpaid creditor, as where, the identity of the control being admitted, the question is as to the verity and good faith of the transfer.”
We perceive from the foregoing that the court’s ultimate conclusion was that the new company was in bad faith and for this reason it was held liable for the old company’s liability to plaintiff. We find not the slightest suggestion of bad faith on the part of the Local and the Independent in the instant case.
Unlike the cited case which involved a utility company with ongoing actual and contingent liabilities to third persons, the Independent was a non-profit corporation *223 whose primary function was to represent employees in collective bargaining. The record does not suggest that the Independent had any obligations when the Local was formed other than the then contingent liability to plaintiffs. At the point in time when the Local was created in August, 1964, plaintiffs’ case against the Independent had been lost in the trial court and was on appeal to this court. Not until December, 1965, did this court decide the case in plaintiffs’ favor. Thus, the timing of these events belies any suggestion of bad faith on the Independent’s part with respect to plaintiffs’ claim motivating the Independent to transfer its assets to the Local in order to defeat plaintiffs’ claim. On the contrary, the only inference which can be drawn from the evidence is that the creation of the Local and its receipt of the assets of the Independent was accomplished for some legitimate purpose in connection with the activities of the union. Neither the plaintiffs’ claim nor that of any other creditor had anything whatsoever to do with the arrangements between the Independent and the Local.
The distinction we have made is supported by a consideration of other cases which have followed and applied the principles of the Wolff case.
In Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642 (1928), a new corporation was held liable for lease payments contracted for by one of the individual in-corporators to the plaintiff in a lease made before the corporation was formed. The lease obligated Stephenson to pay plaintiff for gravel taken from plaintiff’s property. After the corporation was formed in December, 1922, it began to pay the royalties to plaintiff pursuant to Stephenson’s contract, and continued with 33 monthly payments until October, 1925. In the meantime the corporation was removing sand and gravel under Stephenson’s management. The court made the following observation:
“Under such circumstances, the conclusion that this was a Stephenson organization, and that the business of the corporation was but a continuation or a “reincarnation” of Stephenson’s business under a new guise, is inescapable.
“With regard to liability for debts of the old corporation, the general rule is that a new corporation organized to succeed an old one is not liable for the debts of the latter. The new corporation, will, however, be liable for the debts of the old one (1) where the circumstances are such as to warrant the conclusion that the former is not a separate and distinct corporation, but merely a continuation of the latter, and hence the same person in law.”
The court cited the Wolff case as authority but we think that the facts of the Heard case demanded the result obtained and there is no comparison between its facts and those developed by the plaintiffs in the instant case.
In Wilson v. Lagasse, 12 La.App. 704, 127 So. 17 (1930) the Wolff case was again relied upon but here again its facts distinguish it markedly from the instant case. There the court held a corporation liable for an individual’s debt where “the incorporation was a mere sham and a delusion, and was resorted to solely for the purpose of preventing execution by [plaintiff] and other creditors . . ..” Here again the key to this case seems to be a showing of an intention to defraud the creditor, an element lacking in the instant case.
We have concluded that plaintiffs’ evidence is insufficient to establish that the Local was simply a continuation of the Independent so as to warrant the result reached in the cited cases. The creation of the Local was motivated by considerations having nothing to do with the claim of plaintiffs or any other creditors. It was simply a logical step in the development of a union which was affiliated with the international A.F.L.-C.I.O. Since there is no showing or even suggestion of fraud or bad faith in connection with the formation of the Local there is no basis for concluding that it is liable for the debt of the Independent to plaintiffs.
Accordingly, the judgment appealed from is reversed and set aside, and there is judg *224 ment in favor of defendant, Norco Local 4-750, Oil, Chemical, and Atomic Workers International Union, and against plaintiffs, Earl J. Roddy and Etienne P. Millet, dismissing their suit at their cost.
REVERSED AND RENDERED.