188 So.2d 445 (1966)
The BOOGIE KINGS, Plaintiff and Appellee,
v.
Clinton GUILLORY, Defendant and Appellant.
No. 1728.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
Rehearing Denied July 28, 1966.
*446 Daniel J. McGee, Mamou, for defendant-appellant.
Earl B. Taylor, Opelousas, for plaintiff-appellee.
Before SAVOY, FRUGE and HOOD, JJ.
HOOD, Judge.
In this action, plaintiff seeks to enjoin the defendant, Clinton Guillory, who is also known and sometimes referred to herein as "Clint West," from using the trade name "The Boogie Kings." The suit was instituted by "The Boogie Kings," an unincorporated association doing business under that trade name, represented herein by three of the officers or representatives of that association. The defendant filed an answer and a reconventional demand, in which he alleges that he has the exclusive right to use that trade name, and he prays for judgment enjoining plaintiff from using it. On the merits, judgment was rendered by the trial court in favor of plaintiff, enjoining the defendant from using the name, "The Boogie Kings."
The evidence shows that in 1955 Douglas Ardoin and Harris Miller formed a dance band or orchestra, and they mutually agreed to call themselves "The Boogie Kings." Other musicians joined the band thereafter, and in 1964 it was composed of ten members. The band was never incorporated and no formal partnership agreement, oral or written, was ever entered into. The band functioned as an organization with a definite membership, however, and as an organized band it acquired movable property and entered into contracts for playing engagements and other matters. The evidence shows that since the initial creation of the orchestra, the members from time to time have elected one of their number to serve as "leader." Although there is some conflict in the testimony, we think the evidence establishes that all major decisions affecting the organization, the assets and the operations of the band have been made by a majority vote of the members.
Ardoin was elected and served as the first leader of the band, and he was succeeded by Miller. Later, Ardoin was reelected to be the leader, and he served as such until he withdrew completely from the band in 1963. Thereafter, he discontinued his career as a musician. Miller succeeded Ardoin as leader in 1963, and he served as such until May, 1964, when a dispute arose between Miller and most of the other members relative to a playing engagement. As the result of that dispute, Miller withdrew as a member of the band.
Defendant, Guillory, joined the band as a drummer and vocalist in 1963. Immediately after Miller withdrew in May, 1964, *447 Guillory was elected by the other members as leader. As the featured vocalist in the band, he was known professionally as "Clint West." In order to capitalize on his popularity as a singer, the name of the band was changed to "Clint West and the Boogie Kings," this change of name being made after defendant became the leader and with the approval of a majority of the members.
Shortly after Miller left the band, he endeavored to form another dance orchestra, which he planned to call "The Boogie Kings." He promptly notified this band, therefore, that they could no longer use that trade name. Without raising an issue as to its right to the name, the orchestra, by majority vote, simply changed the name to "Clint West and The Kings." Two or three months later, Miller informed Guillory, and others, that he had abandoned his efforts to organize another orchestra, and that this band could resume using the trade name, "The Boogie Kings." Thereafter, for the next few months, the band was called "Clint West and The Boogie Kings."
During the latter part of the year 1964, or the first part of 1965, this band was playing regularly at the Bamboo Club in Lake Charles and occasionally at other places. Guillory acquired an interest in the Moulin Rouge Club at that time, however, and he prevailed upon the other members to discontinue playing at the Bamboo Club and to begin playing regularly at the Moulin Rouge instead. A relatively short time after making this change, all of the members except Guillory became dissatisfied with the arrangement, and nine of the ten members voted to go back to playing at the Bamboo Club. Guillory was the only member who refused to join them in this decision, and he thereupon separated or disassociated himself from the other members.
Immediately after this split in the band occurred, the nine original members elected a new leader, a new member came into the band to take Guillory's place, and the orchestra resumed playing regularly at the Bamboo Club, and other places, under the name of "The Boogie Kings." Also, immediately after the split, Guillory joined with nine other musicians to form a new orchestra, and this new group resumed playing at the Moulin Rouge Club, and other places, and they called themselves "Clint West and The Boogie Kings."
The nine original members of the band, who separated from Guillory, compose the plaintiff association. This suit was instituted by them or in their behalf. This plaintiff group contends that the band, as an unincorporated association, had acquired a proprietary interest in the trade name, "The Boogie Kings," that the name belonged to the association as a whole and not to any one individual, that Guillory ceased to have any right to or interest in that trade name when he withdrew as a member of the association, and that his use of the name after his withdrawal is an attempt to capitalize on the reputation of the plaintiff association and cause it injury.
Defendant contends that the band, as an organization or association, never acquired a proprietary interest in this trade name, that the right to use that name was vested originally in Ardoin and Miller, that Miller acquired the exclusive right to use it when Ardoin abandoned any claim to it, and that shortly prior to the "split" Miller specifically gave to defendant Guillory the exclusive right to use the name, "The Boogie Kings."
The trial judge concluded that the band was an "unincorporated association," that it was governed by a majority vote of its members, that defendant Guillory "was never more than a featured vocalist with this band," and that he "never acquired the trade name as such."
It is settled in our law that trade names will be protected against unfair use, imitation, or simulation. The law's protection against unfair competition by the use of another's trade name rests upon the deceit or fraud which the newcomer in the business practices, not only upon the one *448 already established in the business but also upon the public. A trade name, though not the subject of a technical trademark, will be as fully protected as if it had been so registered, on the ground of unfair trade. Priority of appropriation of the trade name determines the question as to which one of the conflicting claimants is entitled to use it. New Orleans Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629; Straus Frank Company v. Brown, 246 La. 999, 169 So.2d 77; Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481; Dynasty Room, Inc. v. Whiskey-A-Go-Go, Inc., La.App. 4 Cir., 186 So.2d 402.
In the instant suit, the evidence shows that during the period from 1955 to 1964 the band known by the trade name of "The Boogie Kings" acquired a considerable amount of popularity. Because of its reputation as a musical organization or dance band, its trade name has acquired some significance and value. The person or organization first appropriating the name or having the legal right to use it, therefore, has a proprietary interest in that name and is entitled to judgment enjoining another from appropriating it.
In our opinion, this band, when first organized in 1955, became an unincorporated association, and it has continued to be such an organization since that time. The evidence convinces us, as it apparently did the trial judge, that the original trade name, "The Boogie Kings," was adopted by mutual agreement of the members of the band, that a proprietary interest in that name became vested in the band, as an unincorporated association, and that it did not become vested in any individual member of that band. Miller, therefore, had no right or authority to "give" or to transfer to defendant Guillory the exclusive right to use that name.
We think the law is correctly stated in 7 C.J.S. Associations § 13, Name and Seal, p. 37, as follows:
"An unincorporated association has the right to adopt a name by which it shall be known. The name of an unincorporated association is a necessary element of its existence and the right to its exclusive use will be protected upon the same principle that persons are protected in the use of trade marks; thus, in a proper case, a court of equity will protect an association in the use of its name by the issuance of an injunction, although complainant association may not be carrying on a trade, or an industrial or financial business which could be injuriously affected, and the right to injunction in such cases has been determined to be dependent neither upon an actual showing of specific injury nor the misleading of any particular person, the demands of the law in this respect being met when it is made to appear that there is a natural and probable tendency to mislead and confuse the public to the injury of the association having the prior right to the distinctive names and emblems. However, equity will not grant injunctive relief in such cases unless plaintiff association's exclusive right to the use of such name is clearly established, nor will relief be granted where laches have barred enforcement of complainant's right.
Dissatisfied members of an association cannot deprive it of the right to use its own name by incorporating themselves thereunder, and enjoining it from using the same."
In Most Worshipful Sons of Light Grand Lodge v. Sons of Light, 118 Cal.App.2d 78, 257 P.2d 464, 470 (Cal.), where members of the plaintiff lodge separated from it and formed a new lodge using substantially the same name, the California District Court of Appeal said:
"* * * The lodge name is an asset of the particular lodge and like other assets belongs to the old and not the new lodge. Nor is any defendant lodge entitled *449 to use any name so similar to that of any plaintiff lodge as to be likely to confuse the public. * * *"
In Kline v. Knights of the Golden Eagle, 113 N.J.Eq. 513, 167 A. 758 (N.J.), the principal defendant, Allen, was one of the organizers of the plaintiff lodge and for a time was its dominating spirit. He resigned and then organized another lodge with substantially the same name. In enjoining him from continuing to use the name, the court said:
"The adoption of the title `Knights of the Golden Eagle' by Allen was intentional and vengeful; he admits it. That is quite sufficient to move equity to restrain him from the mischief he contemplated doing. * * *"
Our conclusion in the instant suit is that the trade name, "The Boogie Kings," was initially appropriated by an unincorporated association composed of Ardoin and Miller. Although other members were taken in later, the association itself retained a proprietary interest in the name and is entitled to be protected in its use of that name. When Miller left the band in 1964, he lost any right which he may have had to use the trade name of that association. He thus had no authority to give such a right to defendant Guillory.
We conclude that Guillory acquired no right to use the trade name of the band, either from Miller or from the circumstance that he had been elected as leader of the band. The trial judge, therefore, correctly enjoined defendant from continuing to use that name.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.