652 So.2d 1306 (1995)
GULF COAST BANK
v.
GULF COAST BANK & TRUST COMPANY.
No. 94-C-2203.
Supreme Court of Louisiana.
April 10, 1995.
*1308 Paul J. Hebert, Lafayette, for applicant.
Jack A. Ricci, Gary J. Giepert, Ricci & Giepert, New Orleans, for respondent.
KIMBALL, Justice.[*]
We granted certiorari to consider the viability of our holding in Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964), requiring one to prove fraud in a suit seeking an injunction against alleged trade name infringement. We conclude that one need not prove fraud to enjoin another from using its trade name, but rather must show that there is a likelihood of consumer confusion created by the defendant's use of the trade name. Accordingly, we overrule Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (La.1964), and any other cases in conflict with our holding.

I.
Plaintiff, Gulf Coast Bank, was organized as a corporation on January 20, 1970 and its articles of incorporation were filed with the Secretary of State on July 9, 1970. La.R.S. 12:23. Effective August 10, 1970, it was authorized by the Louisiana State Banking Department to conduct business as a bank. La. R.S. 6:212. On October 1, 1984, Gulf Coast Bank filed its trade name, "Gulf Coast Bank", with the Secretary of State. La.R.S. 51:211, et seq. It has continued to operate under the name "Gulf Coast Bank" to the present day. It conducts business primarily in the Acadiana area. Defendant, Gulf Coast Bank and Trust Company, was chartered with the Secretary of State in June, 1990, and soon thereafter began doing business as a bank. It operates primarily in the New Orleans metro area.
Plaintiff, Gulf Coast Bank, filed a petition seeking a declaratory judgment and injunctive *1309 relief, claiming that defendant, Gulf Coast Bank & Trust's corporate name is deceptively similar to plaintiff's in violation of Louisiana Revised Statutes 12:23(B), and that Gulf Coast Bank & Trust had infringed on its trade name in violation of Louisiana Revised Statutes 51:211 et seq., and should be enjoined from further use of the name. Defendant filed a general denial answer and limited discovery was conducted consisting of plaintiff's answers to defendant's interrogatories, and the filing of affidavits and documents. Plaintiff, Gulf Coast Bank, filed a motion for summary judgment claiming that the above referenced statutes entitle plaintiff to relief as a matter of law by the mere fact of its prior registration of its corporate name and trade name. Defendant, Gulf Coast Bank & Trust, filed a cross-motion for summary judgment, claiming that plaintiff had to prove fraud on the part of defendant, which was not alleged, and that alternatively, plaintiff and defendant operate in two separate geographic locations and thus there is no likelihood of the public being confused or deceived by Gulf Coast Bank & Trust's continued use of its name. The trial court denied Gulf Coast Bank's motion for summary judgment, granted the motion for summary judgment of Gulf Coast Bank & Trust, and entered judgment dismissing plaintiff's petition. The court of appeal affirmed, stating:
"[O]ne [issue] is clearly and immediately dispositive of this appeal. Our Supreme Court has held that, in order to obtain an injunction to bar trade name infringement, the plaintiff must prove fraud on the part of the defendant...." Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77, 80 (1964).... As the plaintiff-appellant agrees that it has not even alleged fraud, it is clear that this action was properly dismissed.
Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 93-2490, p. 2 (La.App. 4th Cir. 7/27/94), 641 So.2d 682, 683.
We granted certiorari to revisit the issue of whether fraud is a proper requirement in seeking an injunction for trade name infringement. 94-2203 (La. 11/18/94), 646 So.2d 363.

II.
The primary issues in a trade name infringement case are (1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude others from using, and (2) if so, whether there has been an infringement of that right. Radiofone, Inc. v. Mobile-One Sound, Inc., 628 So.2d 95 (La.App. 5th Cir.1993); Merit Indus. Constructors, Inc. v. JE Merit Constructors, Inc., 563 So.2d 1008 (La.App. 1st Cir.1990); Sadie's Inc. v. Hitchcock, 363 So.2d 1306 (La.App. 4th Cir.1978); Security Ctr., Ltd. v. First Nat'l Sec. Ctrs., 750 F.2d 1295 (5th Cir.1985); Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir.1984); Conagra, Inc. v. Singleton, 743 F.2d 1508 (11th Cir.1984); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786 (5th Cir.1983); Vision Ctr. v. Opticks, Inc., 596 F.2d 111 (5th Cir.1979). Determining what protections are afforded to trade names in Louisiana requires an initial examination of Louisiana Revised Statutes 51:211 et seq.[1] This cryptic statutory scheme, entitled "Trade Marks and Trade Names", has been subjected to piecemeal amendments and is unclear as to the extent of its applicability to trade names.
Prior to 1954, Louisiana's Trademark Act provided limited statutory protection to limited types of trademarks. See 1898 La.Acts, No. 49; 1906 La. Acts, No. 112. In 1954 the statutory scheme for the registration and protection of trademarks was revamped and made applicable to a broader range of trademarks. 1954 La.Acts, No. 235. The 1954 Act, located at La.R.S. 51:211 et seq., repealed the prior law and provided for "the registration and protection of trade-marks," defining trade-mark as "any word, name, symbol, or device or any combination thereof adopted and used by a person to identify *1310 goods made or sold by him and to distinguish them from goods made or sold by others, or to designate a particular place of business." The 1954 Act clearly indicated that the registration and protections provided therein were applicable only to "trade-marks" as defined above, and were not applicable to trade names. The 1954 Act was modeled after The Model State Trademark Bill, which was drafted by the United States Trademark Association in 1949. In turn, the Model Bill was patterned after the federal trademark act, known as the Lanham Act, 15 U.S.C. 1051 et seq., which was enacted in 1946. Restatement (Third) of Unfair Competition § 9, comment e (1995); 2 McCarthy, McCarthy on Trademarks and Unfair Competition, § 22.03 (1994). The Lanham Act, which had a similar definition of trademark and similar provisions relating to registration and infringement, has consistently been held not to provide for the registration of trade names.[2]Application of Antenna Specialists Co., 56 C.C.P.A. 1045, 408 F.2d 1052 (1969); Application of Walker Process Equip., Inc., 43 C.C.P.A. 913, 233 F.2d 329 (1956); Communications Satellite Corp. v. Comcet, Inc., 429 F.2d 1245 (4th Cir.1970); 1 McCarthy § 9.06[1].
In 1964, the Model Bill was amended, and, in 1968, Louisiana followed suit, enacting most of the changes as were made in the Model Bill. Section 211, providing definitions, was amended to provide for "trademark", "service mark", "mark", and "trade name" as follows:
A. The term "trademark" as used herein means any work, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others.
B. The term "service mark" as used herein means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others.
C. The term "mark" as used herein includes any trademark or service mark entitled to registration under this Subpart whether registered or not, including the designation of a particular place of business.
D. The term "trade name" means a word, name, symbol, device or any combination thereof used by a person to identify his business, vocation or occupation and distinguish it from the business, vocation or occupation of others.
However, while the Act defined "trade name", no provisions for its registration or protection were included anywhere in the Act. Rather, registration of a "mark" was provided for and infringement of a "mark" and remedies for infringement of a "mark" were provided for.[3] Beginning in 1976, changes were made in the Louisiana Act in reference to trade names which differed from the Model Bill. In 1976, the Act was amended to allow one to reserve for a limited period the right to use a "trade name or trademark" for future use. 1976 La.Acts, No. 457, found at La.R.S. 51:213. Despite this amendment specifically providing for the reservation of use of a trade name, none of the other provisions relating to registration were amended. See Section 212, establishing circumstances in which a "mark" shall not be registered; Section 214, providing for the application for registration of a "mark"; Section 215, providing for the issuance of a certificate of registration of a "mark"; Section 216, providing for the duration and renewal *1311 of registration of a "mark"; Section 217, providing for assignment of a "mark" and its registration; Section 218, providing for the keeping of registration records for all "marks"; Section 219, providing for the cancellation of a registered "mark"; Section 221, providing for fraudulent registration of a "mark". See also Sections 222-23, providing for the infringement of a registered "mark" and the remedies therefor. Thus, in 1976, there was a statutory vehicle by which one could reserve future use of a trade name but no such statutory vehicle by which one could actually register such trade name or receive statutory protections.
In 1983, the Act was again amended. 1983 La.Acts, No. 90. This Act amended Section 215 and provided for the issuance of a certificate of registration for a "trade name" as well as for a "trademark" and a "service mark". Despite this amendment to Section 215, Section 214, providing for the application for registration, remained unchanged and made reference only to the registration of a "mark". Likewise, Sections 222-23, providing for infringement and remedies, remained applicable only to a "mark".
In 1989, Section 214 was amended to specifically provide for what had implicitly been provided for in the 1983 amendment and arguably the 1976 amendmentthe application for registration of a "mark or name". 1989 La.Acts, No. 100. Two years later, several of the sections were again amended to refer specifically to a "trade name, trademark, or service mark." 1991 La.Acts, No. 746. See Section 213(B) providing for the reservation of use of a "trade name, trademark, or service mark"; Section 215 providing for the issuance of a certificate of registration for a "tradename" or a "trade mark or service mark"; Section 217 providing for the assignment of any "trademark, trade name, or service mark, and its registration." See also Section 215.1, which was added, providing for the correction of an issued certificate of registration for a "trademark", "trade name", or "service mark". However, there was still no amendment to Sections 222-23, which provide a cause of action and remedies for the infringement of a "mark" only, and not for the infringement of a "trade name."
It cannot be said that the legislature intended "mark" to include trade names, as the two are specifically defined as different things in the Act, and the legislature on numerous occasions has shown its understanding that the two terms refer to different things by either amending "mark" to "trade name, trademark, or service mark" or by using the terms "mark" and "trade name" in the same section to denote two different things. What has resulted is a statutory scheme whereby trademarks and service marks are accorded substantive statutory protections, but trade names, while allowed to be registered, receive no statutory protections for infringement.[4] The question then is what protections did the legislature intend for trade names? For the following reasons, we conclude the legislature intended to leave the substantive protection of trade names to the jurisprudentially developing law relating to trade names as part of the law of unfair competition.
First, it has long been held in Louisiana that trade names will be accorded the same protections as trademarks under the law of unfair competition. New Orleans Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944); Albrecht v. Del Bondio, 188 La. 502, 177 So. 587 (1937); Marcev v. Mandich, 158 La. 15, 103 So. 389 (1925); Yellow Cab Co. of New Orleans, Inc. v. Jones, 156 La. 837, 101 So. 216 (1924); Boogie Kings v. Guillory, 188 So.2d 445 (La. App. 3d Cir.1966); Paducah Distilleries Co. v. Crescent Mfg. Co., 6 Orl.App. 151 (1909). It has also been long held that the protection of trademarks and trade names under the law of unfair competition is based on the proprietary interest one has in the mark or *1312 name, and such protection is based on equity and does not require statutory provisions. New Orleans Checker Cabs, Inc., supra; Handy v. Commander, 49 La.Ann. 1119, 22 So. 230 (1897); Givens Jewelers, Inc. v. Givens, 380 So.2d 1227 (La.App. 2d Cir.1980); Arbutnot, Latham & Co. v. Cage-Drew Co., 6 Orl.App. 374 (1909); Robinson, Tradenames and TrademarksState and Federal: Some Random Observations, 22 La.B.J. 179 (1974).
Second, in 1984, the legislature amended the trademark and trade name act to add the anti-dilution statute. This was in conformity with a 1964 change to the Model Bill, which had not previously been adopted in Louisiana. It provides:
§ 223.1. Injury to business reputation; dilution
Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.
The anti-dilution cause of action is an extremely wide-reaching one, applying even in the absence of competition between the users of the mark and even in the absence of confusion as to the source of goods, and is thus a much more expansive cause of action than infringement, which does require proof of a likelihood of confusion. David M. Kelly, Broadening Trademark Protection In Louisiana: The Enactment of the Louisiana Anti-Dilution Statute, 33 La.B.J. 224 (1985). It seems illogical that the legislature would allow the broader anti-dilution cause of action, but not the lesser cause of action for infringement of trade names. Reasoning a fortiori, the legislature must have intended there to be a cause of action for infringement of trade names. That cause of action, since not existent in the statutory scheme, must exist in the jurisprudentially developing law of trade names as part of the law of unfair competition.
Also, it seems unlikely that the legislature intended the anti-dilution cause of action to be the sole recourse for users of trade names, as trade names have long been afforded protection under the jurisprudentially developed law of unfair competition, without the need of specific statutory remedies. It seems more likely the legislature recognized that an anti-dilution cause of action is not recognized under the law of unfair competition absent specific statutory authority, Restatement § 25; Kelly, supra, at 226-27 (citing Anheuser-Busch, Inc. v. The Florists Assn. of Greater Cleveland, Inc., 603 F.Supp. 35 (N.D.Ohio 1984)), and thus statutorily provided for it, thereby coming into conformity with the Model Bill. There is absolutely no indication of legislative intent that the antidilution statute was to be the only protection available for trade names. In fact, Section 223.1 makes reference to both marks and trade names and then provides for injunctive relief "in cases of infringement of a mark ... or in cases of unfair competition ...", thus indicating the continued applicability of the law of unfair competition to trade names.
Third, reading the trademark and trade name act in pari materia with Louisiana Revised Statutes 12:23, further indicates a legislative intent to apply the law of unfair competition to trade names. Revised Statutes 12:23 provides for the reservation of the corporate name and requires "The corporate name ... shall not be the same as, nor deceptively similar to, the name of any [] corporation or trade name registered with the secretary of state...." It goes on to state "Nothing in this section shall abrogate or limit the law as to unfair competition or unfair practice in the use of trade names, nor derogate from the principles of law or the statutes of this state, or of the United States, with respect to the right to acquire and protect trade names." (emphasis added).
It is evident from all of the above, that the legislature intended there to be a cause of action for infringement of trade names and remedies therefor, under the jurisprudentially developing law relating to trade names as part of the law of unfair competition. We *1313 now turn our attention to the substantive merits of this case.

III.
As stated earlier, our first inquiry is whether Gulf Coast Bank had a protectable property right in its name such that it may exclude others from using it. In determining whether one has a protectable trade name, actual use of a mark or name, or, in other words, priority of appropriation, gives rise to a protectable proprietary interest in the mark or name. New Orleans Checker Cabs, Inc., supra; Handy, supra; Louisiana State Optical of Jefferson Parish, Inc. v. Louisiana State Optical of Kenner, Inc., 469 So.2d 994 (La.App. 5th Cir.1985); Givens Jewelers, Inc., supra; Sadie's, Inc., supra; Couhig's Pestaway Co. v. Pestaway, Inc., 278 So.2d 519 (La.App. 3d Cir.1973); Boogie Kings, supra; Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La.App. 4th Cir.1962); Restatement, § 18. See also La. R.S. 51:214-15, which requires use of the trademark or trade name before registration is permitted.[5] It is uncontested that Gulf Coast Bank has continually used its name "Gulf Coast Bank" since 1970, in addition to registering its trade name "Gulf Coast Bank" with the Secretary of State in 1984.
Use alone, however, does not create a protectable proprietary interest; the trademark or trade name must be distinctive, either by being inherently distinctive or by having acquired distinctiveness through secondary meaning. Two Pesos, Inc. v. Taco Cabana, Inc., ___ U.S. ___, ___, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615, 625 (1992); Security Ctr., Ltd., supra; Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir.1984); Restatement § 13. See also Radiofone, Inc., supra; Merit Indus. Constructors, Inc., supra; Head v. Waggoner, 552 So.2d 599 (La.App. 2d Cir.1989); Givens Jewelers, Inc., supra; Sadie's Inc., supra. In determining the distinctiveness of a trademark or trade name, Louisiana courts and federal courts have generally divided trademarks and trade names into four categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. Radiofone, supra; Merit Indus. Constructors, Inc., supra; Head, supra; Security Ctr., supra; Zatarains, Inc., supra; Vision Ctr., supra; Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir.1976); Restatement §§ 13-15.
A generic term is the name of a particular genus or class of which an individual article, service or business is but a member. Radiofone, 628 So.2d at 97; Merit Indus. Constructors, Inc., 563 So.2d at 1011; Zatarains, Inc., 698 F.2d at 790; Vision Ctr., 596 F.2d at 115; Restatement § 15. Generic terms are considered to be in the public domain and are not susceptible to appropriation for exclusive use and thus are not given trademark or trade name protection. Zatarains, Inc., 698 F.2d at 790; Vision Ctr., 596 F.2d at 115; Restatement § 15. A descriptive term identifies a characteristic or quality of an article, service or business. Radiofone, 628 So.2d at 97; Merit Indus. Constructors, Inc., 563 So.2d at 1011; Head, 552 So.2d at 603; Zatarains, Inc., 698 F.2d at 790; Vision Ctr., 596 F.2d at 115; Restatement § 14. Though ordinarily not protectable, a descriptive name may become a valid, protectable trade name if it acquires a secondary meaning. Radiofone, 628 So.2d at 97; Merit Indus. Constructors, Inc., 563 So.2d at 1013; Head, 552 So.2d at 603; Zatarains, Inc., 698 F.2d at 791; Vision Ctr., 596 F.2d at 115; Restatement §§ 13-14. Included in the category of descriptive terms which must have secondary meaning in order to be afforded protection as a trade name are geographic terms.[6]Louisiana State Optical of Jefferson Parish, Inc., 469 So.2d at 997; Boston Beer *1314 Co. L.P. v. Slesar Bros. Brewing Co., 9 F.3d 175 (1st Cir.1993); Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir.1984); Restatement § 14. A suggestive term suggests, rather than describes, a characteristic of the goods, services or business and requires an effort of the imagination by the consumer in order to draw a conclusion as to the nature of the goods, services, or business. Merit Indus. Constructors, Inc., 563 So.2d at 1011; Head, 552 So.2d at 603; Zatarains, Inc., 698 F.2d at 791; Vision Ctr., 596 F.2d at 115-16. Suggestive marks or names need not acquire secondary meaning to be protected. Head, supra; Vision Ctr., 596 F.2d at 116; Zatarains, Inc., 698 F.2d at 791. Arbitrary or fanciful terms bear no relationship to the product, service or business to which it applies. Merit Indus. Constructors, Inc., 563 So.2d at 1013; Zatarains, Inc., 698 F.2d at 791; Vision Ctr., 596 F.2d at 116. Arbitrary and fanciful marks or names, like suggestive ones, are considered inherently distinctive and are accorded protection without having to prove secondary meaning. Zatarains, Inc., 698 F.2d at 791; Vision Ctr., 596 F.2d at 116.
Looking at the name "Gulf Coast Bank", it contains the word "Bank" which would seem to denote the genus of this businessbanks, and in fact is required to be in every bank's name. La.R.S. 6:212. It thus appears to be a generic term. The term "Gulf Coast" is geographic, denoting the general geographic area in which this bank operates. When the name is considered as a whole, "Gulf Coast Bank" is not inherently distinctive, and thus, secondary meaning must be established. See e.g. Great Southern Bank v. First Southern Bank, 625 So.2d 463 (Fla.1993); Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir.1984).
The concept of "secondary meaning" recognizes that words with an ordinary or primary meaning of their own, may, by long use with a particular product, service or business, come to be known by the public as specifically designating that particular product, service or business, and thereby rise to the level of a fully protected trademark or trade name. Radiofone, 628 So.2d at 98; Sadie's, Inc., supra; Zatarains, Inc., 698 F.2d at 791; Vision Ctr., 596 F.2d at 118 (citing Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938)). The burden of proving secondary meaning is on the plaintiff. Radiofone, supra; Zatarains, Inc., supra; Vision Ctr., supra; Restatement § 13, comments a & e. Whether a trademark or trade name has acquired secondary meaning is a factual issue. Boston Beer Co. L.P., supra; Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033 (2d Cir.1992); In re Loew's Theatres, Inc., 769 F.2d 764 (Fed.Cir.1985); Zatarains, Inc., 698 F.2d at 794; Restatement § 13. Proof of secondary meaning may consist of, among other things, direct evidence such as testimony from individual consumers, surveys, proof of actual instances of confusion, or indirect evidence such as the volume of business done under the name, the length of time the designation has been in use, advertising and promotional efforts, and the conspicuousness of the designation. See e.g. Boston Beer Co. L.P., supra; Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 292 (3d Cir.1991); Restatement, § 13, comment e. The trial judge did not address the issue of secondary meaning, instead granting Gulf Coast Bank & Trust's motion for summary judgment on other grounds. In light of our holding remanding the case, infra, this issue should be considered on remand.

IV.
We now turn to the second inquiry whether there has been an infringement. Defendant, Gulf Coast Bank & Trust, argues that even assuming plaintiff's name "Gulf Coast Bank" has acquired secondary meaning, summary judgment was proper and the court of appeal was correct in affirming that judgment because, under Straus Frank, in order to prove infringement, plaintiff, Gulf Coast Bank, must prove fraud on the part of *1315 defendant, and fraud has not been alleged in this case. We disagree with and overrule Straus Frank and hold that one seeking to enjoin another for trade name infringement, need not prove fraud.

A.
To understand the interplay of fraud with the law of trademarks and trade names, a brief discussion of the history and evolution of this area of the law is warranted.[7] The law of trademark infringement originally was based on deceit and fraud and evolved into a distinct tort of "passing off" or "unfair competition." The conception of trademarks evolved into a recognition of trademarks as property that ought to be protected. This notion of trademarks as property is often traced to the English case of Millington v. Fox, 3 My. & Cr. 338 (1838). In the United States, this notion was firmly announced in the Trade-Mark Cases, 100 U.S. (10 Otto) 82, 25 L.Ed. 550 (1879).
This recognition of trademarks as property, however, only applied to limited types of marks or names, giving rise to a distinction between "trademarks" and "tradenames." The term "trademark" described only inherently distinctive designations, i.e., arbitrary or fanciful marks. Such marks were deemed subject to exclusive appropriation by the initial user of the mark. Trademarks were considered property, imitation of which gave rise to a suit for "trademark infringement", as part of the law of unfair competition. In such a suit, no showing of fraud was necessary, but rather only a threatened appropriation of good will arising from consumer confusion. The term "tradename" applied to designations that were not inherently distinctive, and thus, were in the public domain and not subject to exclusive appropriation, i.e., descriptive, generic, or geographic terms or surnames. Since tradenames were considered to be in the public domain and not subject to exclusive appropriation, they were not considered to be property, and thus, protection of such tradenames required a showing of fraud on the part of the second user.
However, use of the terms "trademark" and "trade name" changed over time and were no longer used to differentiate between the degree of distinctiveness of the designation. Rather, as stated in American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926), the term "trade name" is applicable to the particular business and its good will, and "trademark" is applicable to the goods to which it is affixed. The Court then noted that the difference, however, is not generally material because the law affords protection against appropriation to both, under the same fundamental principles. These definitions by the Supreme Court have solidified over time and are now the generally prevailing view of "trademarks" and "tradenames."[8]
It became accepted that a designation, even though not inherently distinctive, may become distinctive with use over time such that the public associates a particular trademark with particular goods or services, or associates a particular trade name with a particular business and its good will. Because such marks or names became recognized as having acquired distinctiveness, they were deemed worthy of protection, and it *1316 was recognized that use of a similar name may lead to consumer confusion and thus the fraud requirement disappeared. This is known as the secondary meaning doctrine. Thus, "trademark" today encompasses the old definition of "trademark" and "tradename", applying to inherently distinctive marks as well as to non-inherently distinctive marks which have acquired secondary meaning. Similarly, the term "trade name" today refers to the name of a business and is afforded protection under the same principles as are applicable to trademarks. The distinctions between the law applicable to trademarks and trade names have disappeared and both are treated essentially the same. Thus, the requirement of proving fraud in order to get an injunction for trade name infringement has disappeared.
Louisiana, however, has retained a fraud requirement for trade name infringement where the petitioner relies on secondary meaning. In Straus Frank Co. v. Brown, 246 La. 999, 1007, 169 So.2d 77, 80 (1964), this Court addressed the following issue:
Is it necessary to establish fraud on the part of the party who has adopted a trade name similar to one which has acquired a secondary meaning in order that he may be enjoined from the use of the similar name?
The court answered the question in the affirmative.
In Straus Frank, the plaintiff, who operated auto parts and supply stores in the City of Lake Charles under the trade name "Lake Auto Parts", sought damages and an injunction to restrain the defendant from the use of the trade name "Lake Auto Supply" in the conduct of his business of selling auto parts and supplies in the town of Lake Arthur. While holding that fraud need be proven, the Court appears to have focused primarily on the fact that plaintiff's business had not suffered in any way and on the fact that there was no confusion among the general public. Only after so concluding, did the court then state that defendant did not choose its name out of a fraudulent motive. Thus, the holding imposing the fraud requirement seems to have been much more sweeping than was necessary to decide the case and was made with relatively little analysis.
The Straus Frank decision has been criticized by several courts since it was handed down, Merit Indus. Constructors, Inc. v. JE Merit Constructors, Inc., 563 So.2d 1008, 1013 n. 5 (La.App. 1st Cir.1990); Sadie's, Inc. v. Hitchcock, 363 So.2d 1306 (La.App. 4th Cir.1978) (Lemmon, J., concurring); Vision Ctr. v. Opticks, Inc., 596 F.2d 111, 118 (5th Cir.1979), and was expressly disagreed with by Judge Lobrano in his concurrence in the court of appeal decision in this case. 93-2490, 641 So.2d at 684. In Vision Center, the United States Fifth Circuit Court of Appeal stated:
Most courts hold that once the plaintiff establishes secondary meaning he need only show a likelihood of confusion in order to enjoin an infringing use. The Louisiana courts, however, continue to hold that the plaintiff who depends on secondary meaning for his trade name cannot obtain injunctive relief unless he proves fraud or unfair competition on the part of the defendant. Under this rule, the law of unfair competition effectively swallows up the secondary meaning doctrine. Although Callman expressly disapproves of the Louisiana case law and considers it erroneous, we are not at liberty to do so.
596 F.2d at 118 (citations omitted). The commentators have also criticized the Louisiana requirement of proving fraud. 3 R. Callman, The Law of Unfair Competition, Trademarks, and Monopolies, § 19.25 (1985); Robinson, Tradenames and TrademarksState and Federal: Some Random Observations, 22 La.B.J. 179, 186 (1974); Martin & Springgate, Protection of a Businessman's Proprietary Information, 32 La.L.Rev. 497, 526 n. 125 (1972); Woodson, Note, What's in a Name?Louisiana's "Protection" of Tradenames: Elle, Ltd. v. Elle Est, 41 La.L.Rev. 1389, 1393 n. 40 (1981). We agree with this criticism, and feel the fraud requirement is unduly burdensome, outdated, completely swallows up the secondary meaning doctrine, *1317 and fails to properly balance the purposes behind the protection of trade names.
The court, in Straus Frank, relied on references in prior cases that the basis of an unfair competition action is fraud, and failed to recognize the evolution of the law of trade names as part of unfair competition, even in the Louisiana jurisprudence. The court, in Straus Frank, relied on both New Orleans Checker Cabs, Inc. v. Mumphrey, 205 La. 1083, 18 So.2d 629 (1944) and Yellow Cab Co. of New Orleans, Inc. v. Jones, 156 La. 837, 101 So. 216 (1924) as requiring that fraud must be shown in a trade name infringement case. However, in Jones, though the court stated unfairness and fraud is the basis of a trade name/unfair competition action, it recognized that one must be presumed to have intended the natural consequences of his acts and then went on to show that defendant's use of a similar trade name as plaintiff's would tend to deceive and confuse the public. While fraud appeared to be present, the focus of the opinion was on whether the public was confused by defendant's use of the trade name. In Mumphrey, the court recognized that trade names, though not the subject of a technical trade mark, will be as fully protected as if they were, on the ground of unfair trade, even in the absence of a statute. While the court recognized that the law's protection under unfair competition is based on fraud and deceit, the court never made a specific finding of fraud on the part of the defendant, and relied on a trademark case, Handy v. Commander, 49 La.Ann. 1119, 22 So. 230 (1897), to hold that the right to exclusive use of a trade name is based on priority of appropriation. The third opinion relied on by the court in Straus Frank was Home Beverage Serv. v. Baas, 210 La. 873, 28 So.2d 481 (1946), which did squarely hold that where one relies on the secondary meaning of a trade name or trademark, fraud must be proven, relying on no Louisiana cases, but rather on an A.L.R. quotation which was arguably outdated at the time, and certainly outdated by 1964, when Straus Frank was decided.
Also, by the time this court decided Straus Frank, two Louisiana courts of appeal had already squarely rejected the fraud requirement, and had adopted the more modern approach, focusing on the actual consequences of the defendant's use of the name rather than the defendant's motive. Williams v. Ferguson, 104 So.2d 267 (La. App. 2d Cir.1958); Huth v. Rosenzweig, 27 So.2d 742 (La.App.Orl.1946). The court, in Williams, stated:
It could hardly be disputed there is a property right in a name used over a considerable period of time in which business has been conducted and under which good will and reputation have been established. There are instances where trade names have acquired a secondary meaning so closely in the mind of the public as applying to one business or to one product that its use by competitors for the purposes of unfair competition would be prevented by equitable means of injunction. Where a trade name has acquired such significance in the minds of the public as applying to one business, equity will restrain the use of a name so similar as to confuse and mislead the public to the first user's injury. It is not necessary, however, that the second user employing the name which interferes with another's prior right should have adopted such name with the intent to deceive the public or to injure the other. The consequences, and not the motive, are controlling.

104 So.2d at 269-70 (emphasis added) (citations omitted). Thus, contrary to the court's assertion in Straus Frank, the law in Louisiana was hardly clear on this subject, and in fact, several of the cases had shown development away from the fraud requirement, and even outright rejection of it.
Also, the court in Straus Frank failed to recognize the purpose and significance of the secondary meaning doctrine. As explained previously, courts originally only gave full protections under "trademark infringement" to those marks that were inherently distinctive. Courts were reluctant to afford the same protections to marks or names relying on secondary meaning for their distinctiveness, feeling these words were in *1318 the public domain, and thus requiring the plaintiff to prove fraud. 1 McCarthy § 11.09; 3 Callman, § 19.25; Woodson, Note, supra, at p. 1394-95 n. 49. However, the unfairness of this approach became apparent and the secondary meaning doctrine arose, correcting this unfairness and providing full protections to such marks or names, thereby signaling a retreat from the fraud requirement. Woodson, Note, supra, at p. 1394-95, n. 49.
The touchstone to receiving protection as a trademark or trade name is distinctiveness. Restatement, § 13; 74 Am.Jur.2d, § 5; 1 McCarthy, § 3.01[1]; Callman, § 18.01. Distinctiveness gives rise to the right of the user to appropriate the mark or name for his use (subject to the various rules relating to this area of the law) and the concomitant right to prevent others from using it in a manner likely to cause confusion. Restatement, § 13; 74 Am.Jur.2d, § 16; 3 Callman, § 18.01; 1 McCarthy, §§ 2.01-14. As already explained, arbitrary, fanciful and suggestive marks or names are inherently distinctive and thus are subject to exclusive appropriation and protectable as a trademark or trade name. On the other hand, generic marks or names are not distinctive of the goods or of the business respectively, and thus remain in the public domain, not susceptible to exclusive appropriation and are not protectable as trademarks or trade names. This is also true of descriptive and geographic marks or names, but, if it is shown the mark or name has secondary meaning, i.e., the public associates the name with the particular business, or associates the mark with the particular goods or services, then that mark or name obviously has become distinctive, is subject to exclusive appropriation, and is fully protectable as a trademark or trade name.
A trademark or trade name relying on secondary meaning for its distinctiveness is in no way a lesser species of mark or name, and is afforded the same protections as an inherently distinctive mark. Restatement, § 13, comment e; 74 Am.Jur.2d, §§ 74-78; 1 & 2 McCarthy, §§ 11.09, 15.01; 3 Callman, § 19.25. The fact of the matter is they are both distinctive; there are just two different methods by which a mark or name may be distinctive: (1) it can be inherently distinctive from its inception and initial use, or (2) it can become distinctive over a period of time by acquiring secondary meaning. Today, courts and commentators all over the country recognize that as long as a mark or name is distinctive, whether it be inherently distinctive or be distinctive as having acquired secondary meaning, a prior user may prevent others from using a similar mark or name in a manner likely to cause confusion. Restatement, § 13; 74 Am.Jur.2d, §§ 5, 16, 50, 64; 3 Callman, §§ 17.05, 19.25; 1 & 2 McCarthy, §§ 11.01-9, 15.01, and cases cited therein. The court's imposition, in Straus Frank, of an additional requirement of fraud where one relies on the secondary meaning doctrine essentially nullifies the doctrine because it does not recognize that the mark or name has in fact become distinctive in its own right.
Furthermore, the purposes of unfair competition law, particularly in relation to trademarks and trade names, belies the imposition of a fraud requirement. The basis of unfair competition has evolved from one of free trade concerned primarily with the prevention of fraudulent practices, to one of fair trade, with its primary function being to prevent consumer confusion. Restatement, §§ 1, comment g, 9, comment c & d, 12 comment b; 1 McCarthy, §§ 1.01-17, 2.01-14; Woodson, Note, supra, at p. 1394-95 (citing W. Derenburg, Trade-Mark Protection and Unfair Trading 28-159 (1936)). The purposes of unfair competition law, particularly in relation to trademarks and trade names, is threefold: (1) to protect the trademark or trade name owner's interest in claiming the benefits of its goodwill; (2) to protect the consuming public; and (3) to encourage competition. See Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas, 909 F.2d 839, 843-44 (5th Cir.1990); 1 McCarthy, § 2.01; Restatement, §§ 9, comments c & d, 12, comment b. A court must balance these *1319 interests in any unfair competition or trademark/trade name infringement case.
The protection of the original user of the mark or name is justified because the user has invested time, work and money in establishing its name and good will, which has significant value and which may serve as a source of profits that should be protected by society. The protection of trademarks and trade names encourages investment in quality, service and other activities that generate good will by insuring the opportunity to recapture the benefits of a favorable reputation. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); Restatement, §§ 9, comment c, 12, comment b; 74 Am.Jur.2d, § 8; This should have nothing to do with whether there is fraud on the part of the subsequent user of the mark or name; it is a question of whether the business' proprietary interest is such that it should be protected from devaluation. As has been explained already, whether the name is inherently distinctive, or distinctive by acquiring secondary meaning, that name equally serves the purpose of identifying a business and distinguishing it from others and thus should be equally protected.
A trademark or trade name also serves as an indication of consistent and predictable quality which the consuming public relies upon in choosing which products to buy or which businesses to patron. Confusingly similar trademarks or trade names will lead to unfulfilled expectations on the part of consumers. Again, protection of the public from such confusion has nothing to do with the fraudulent intent vel non of the second user of the name; either way, the effect will be the same.
Balancing the above two goals with the goal of fostering competition, it appears to us that rejecting a fraud requirement where the initial user relies on the secondary meaning doctrine does not unduly burden fair competition. First, unlike with a generic mark or name, protection of a descriptive or geographic name which has acquired secondary meaning does not wholly prevent others from denoting their type of product, service or business. Second, once a descriptive or geographic mark or name acquires secondary meaning, it seems unlikely that one would have a legitimate need to then use a confusingly similar mark or name. Third, regardless of the existence of a fraudulent motive, it seems patently unfair to both the public and the initial user of a name to allow one to use a similar name which creates confusion in the marketplace. As explained earlier, the effect is the same whether fraud is present or not. To impose a fraud requirement elevates the goal of fostering competition to a supreme position which completely undermines the first two goals above.
In our view, allowing an infringement action in relation to a descriptive or geographic name which has acquired secondary meaning upon a showing of a likelihood of consumer confusion, adequately balances the three interests of unfair competition in relation to trade names, and does not unduly burden competition in the marketplace. Conversely, the fraud requirement imposed by this court's decision in Straus Frank effectively disregards the interest in protecting the initial user's proprietary rights in the name and in protecting the public from confusion, and elevates the goal of fostering competition to a supreme, all determinative position.
Because the fraud requirement imposed by this court's decision in Straus Frank is unduly burdensome, completely swallows up the secondary meaning doctrine, and fails to properly balance the purposes behind the protection of trade names, we overrule Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964).[9] We hold that where one relies on secondary meaning to establish the distinctiveness of its name, in order to *1320 enjoin another's use of a similar name, fraud need not be proven, but rather there need only be a likelihood of consumer confusion.

B.
In Gulf Coast Bank & Trust's cross motion for summary judgment in the trial court, and in its brief before this court, they argue that even if the fraud requirement is eliminated, there is no likelihood of confusion in the present case since it and Gulf Coast Bank operate in different geographic regions. The trial court granted its motion for summary judgment, holding that the names "Gulf Coast Bank" and "Gulf Coast Bank & Trust" were not deceptively similar.[10]
Due to the fraud requirement that has existed in Louisiana, there has been little development in the Louisiana jurisprudence concerning the issue of likelihood of confusion. Louisiana courts that have addressed the issue have generally looked to the appearance and actual similarity of the names or marks, evidence of actual confusion, as well as actual fraudulent intent, and the geographic area in which the businesses operate in relation to each other. See e.g. Sadie's, Inc., supra; Couhig's Pestaway Co., supra; Metalock Corp., supra; Huth, supra.
Such evidence is generally looked at by other courts as well. In determining whether there is a likelihood of confusion there are several factors to which other courts have generally looked. In Falcon Rice Mill, Inc. v. Community Rice Mill, Inc., 725 F.2d 336, 345 (5th Cir.1984), the court listed the following factors: similarity of products, identity of retail outlets and purchasers, identity of advertising media, strength or distinctiveness of the mark or name, defendant's intent, similarity of design, and actual confusion.[11] The articulation of the factors to be considered, vary from court to court, however, those listed above are fairly representative. See e.g. Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486 (2d Cir.1988); Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208 (2d Cir.1985); Piper Aircraft Corp. v. Wag-Aero, Inc., 741 F.2d 925, 934 (7th Cir.1984); Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th *1321 Cir.1982); AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir.1979); J.B. Williams Co. v. Le Conte Cosmetics, Inc., 523 F.2d 187, 191 (9th Cir.1975); 2 McCarthy, § 23.03; Restatement, § 21-23.
It is important to note that this list of factors is not exhaustive, and should not be applied mechanistically. In a given case some of these factors may not be applicable, and the weight afforded to each factor will vary on the facts of each case. It must be remembered that these factors are but a tool in answering the ultimate question of whether there is a likelihood of consumer confusion.
Accordingly, summary judgment is not favored in this area of the law, and most courts have held that likelihood of confusion poses a question of fact that should be resolved at trial. See e.g. Country Floors, Inc. v. Gepner, 930 F.2d 1056 (3d Cir.1991); D.C. Comics, Inc. v. Reel Fantasy, Inc., 696 F.2d 24 (2d Cir.1982); American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348 (2d Cir.1981); McGraw-Edison Co. v. Walt Disney Prod., 787 F.2d 1163 (7th Cir. 1986); 1a Gilson, § 8.10[2]; 4 McCarthy, § 32.37. As one court put it:
By their very nature some of these factors are so hazy and grayish in nature that a summary judgment cannot be granted merely upon perusal of affidavits, except in those rare instances where the facts are so black and white in nature that it can be stated unequivocally that there is no genuine issue as to any material fact and no issues to be resolved at a trial.
National Color Lab., Inc. v. Philip's Foto Co., 273 F.Supp. 1002, 1004 (S.D.N.Y.1967), quoted in 4 McCarthy § 32.37. We agree with this view.
In the present case, the names "Gulf Coast Bank" and "Gulf Coast Bank and Trust" appear to be extremely similar semantically. Also, the two parties appear to be in the same industry. Further, affidavits indicate that there have been several instances of actual confusion, for example correspondence addressed to Gulf Coast Bank & Trust was forwarded to Gulf Coast Bank, a wire transfer was sent to Gulf Coast Bank for a customer of Gulf Coast Bank & Trust, inquiries were made by fellow bankers as to whether Gulf Coast Bank in Abbeville was affiliated with Gulf Coast Bank & Trust in New Orleans, and someone came to Gulf Coast Bank in Lafayette to cash a check drawn on Gulf Coast Bank & Trust.
On the other hand, Gulf Coast Bank & Trust alleges that Gulf Coast Bank operates in the Acadiana area and advertises in mediums seeking to reach people in that area, while Gulf Coast Bank and Trust has its main branch in New Orleans, with two Jefferson Parish branches and a loan production office in Mandeville and Baton Rouge and advertises in mediums seeking to reach people in those areas. Gulf Coast Bank & Trust further avers that its business is limited to New Orleans and the surrounding area and East Baton Rouge Parish, while Gulf Coast Bank holds no loans granted to people who reside in Orleans or Jefferson Parish or loans where immovable property in Orleans or Jefferson Parish is involved as security.
However, even if the trial court finds that plaintiff and defendant operate primarily in two separate geographic areas, this does not automatically prevent Gulf Coast Bank from protecting its trade name outside of its area of actual operation. Interconnected with the issue of likelihood of confusion, as well as priority of appropriation, is the extent to which one may protect its trade name outside of its actual geographic area of operation.[12] The basic rule was first set forth in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), that absent any statutory authority to the contrary, one could not enjoin the good faith use of a trademark or trade name by another in a remote geographic region. In other words *1322 protection of the mark or name only extends to areas in which the mark or name has actually been used. The senior user may also protect its trademark or trade name in areas in which their reputation has extended even though that may be outside its area of actual operation, since in such a case the areas are not in actuality remote.[13]Id.; Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc., 921 F.2d 467 (3d Cir.1990), on remand, 784 F.Supp. 231 (E.D.Pa.1992); Wrist-Rocket Mfg. Co. v. Saunders Archery Co., 578 F.2d 727 (8th Cir.1978); Sweetarts v. Sunline, Inc., 380 F.2d 923, 929 (8th Cir. 1967); Stork Restaurant, Inc. v. Sahati, 166 F.2d 348 (9th Cir.1948); ACCU Personnel, Inc. v. AccuStaff, Inc., 846 F.Supp. 1191 (D.Del.1994).
However, even where the two areas are remote, protection of the senior user's mark or name may still exist. Justice Holmes advocated a bright line rule that use of a trademark in one part of a state automatically gives rights to its use in the entire state. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 424, 426, 36 S.Ct. 357, 364-65, 365, 60 L.Ed. 713 (1916) (Holmes, J., concurring). However, such a test does not appear to have been widely accepted. See 3 Callman, supra, § 19.20 at 50-51 and cases cited therein. But see 74 Am.Jur.2d, § 135 and cases cited therein. Most courts and commentators do, however, recognize that the senior user has a right to expand and thereby protect its trademark or trade name outside its area of operation if it is within its "natural zone of expansion,"[14] though application of this doctrine to a given set of facts is somewhat problematical. Gallo v. Safeway Brake Shops of Louisiana, Inc., 140 So.2d 912 (La. App. 4th Cir.1962); Union Nat'l Bank of Texas, Laredo, Texas v. Union Nat'l Bank of Texas, Austin, Texas, 909 F.2d 839, 843 (5th Cir.1990) ("it is also conceivable that anywhere in Texas is part of the normal zone of expansion for a Texas bank ... particularly in light of the advent of branch banking which redefined bank markets."); Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1027-29 (11th Cir.1989); Burger King of Florida, Inc. v. Brewer, 244 F.Supp. 293, 298 (W.D.Tenn.1965); Koffler Stores, Ltd. v. Shoppers Drug Mart, Inc., 434 F.Supp. 697, 704 (E.D.Mich.1976); Younker v. Nationwide Mut. Ins. Co., 175 Ohio St. 1, 7-10, 191 N.E.2d 145, 150-51 (1963); 3 McCarthy, § 26.08; 3 Callman, § 19.21. Relevant factors in deciding whether an area is within one's zone of natural expansion, and whether to apply this doctrine include the type of business or product involved and its consumers, the past expansion practices of the first user, and whether expansion into the area would constitute a likely step in the near future for the senior user, and also the good faith of the junior user is often times considered in this equitable mix. Tally-Ho, Inc., 889 F.2d at 1028; 3 McCarthy, § 26.09; 74 Am.Jur.2d, §§ 131-140; 1 Gilson, § 5.06; 3 Callman, § 19.21.
Gulf Coast Bank argues because since January 1, 1985, statewide banking has been allowed, and because of the extreme need in the banking industry to foster trust and stability in its customers, that, at least for the banking industry, there should be statewide protection of a registered trade name. Gulf Coast Bank also argues that it has, in the past, shown extensive expansion, expanding outside of its original parish, Vermillion, *1323 opening a branch office in Lafayette, and conducting business in 75% of the Acadiana parishes. Furthermore, Gulf Coast Bank points out that it is recognized by the Small Business Administration as a "Preferred Lender" for the entire state of Louisiana and has generated loan production and inquiries from Lake Charles, Baton Rouge, and numerous other metro areas outside of its principal base in Vermillion Parish. Affidavits also indicate that Gulf Coast Bank has an intent and desire to expand their customer base to the New Orleans metro area, but has not opened an office there due to the confusion that would be created.
The trial court did not consider nor analyze whether, and to what extent, Gulf Coast Bank has a right to protect its trade name outside of its actual zone of operation, nor whether statewide protection of trade names should exist in the banking industry. Because of the court of appeal's sole reliance on the absence of fraud to affirm the trial court judgment, it also did not address these issues. However, having eliminated the fraud requirement and having set forth the proper analysis in deciding an action for trade name infringement, we believe that a decision in this case involves the development and determination of factual issues in order to determine whether there is a likelihood of consumer confusion and to determine the degree of protection, if any, which may be afforded to Gulf Coast Bank outside of the Acadiana area. We therefore reverse the trial court's judgment granting Gulf Coast Bank & Trust's motion for summary judgment.

V.
In conclusion, we hold that one seeking to enjoin another from alleged trade name infringement, need not prove fraud on the part of the second user. We accordingly overrule Straus Frank Co. v. Brown, 246 La. 999, 169 So.2d 77 (1964), and other cases inconsistent with our opinion today. We need not address Gulf Coast Bank's arguments concerning the scope of protection afforded by Louisiana Revised Statutes 12:23 and 6:212 and statewide protection of trade names in the banking industry, nor the scope of protection afforded by Louisiana Revised Statutes 51:223.1 (the anti-dilution statute). We hereby reverse the trial court and court of appeal judgments and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] No claim has been made under the federal trademark legislation known as the Lanham Act. 15 U.S.C. 1051 et seq.
[2] While § 43(a) of the Lanham Act, 15 U.S.C. 1125, has been construed broadly to provide for the protection of unregistered trademarks, trade names, and even trade dress, see e.g. Two Pesos, Inc. v. Taco Cabana, Inc., ___ U.S. ___, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); Great Southern Bank v. First Southern Bank, 625 So.2d 463 (Fla.1993); 1 McCarthy, § 9.01[1]-[2], neither the Model Bill, nor the Louisiana Act, has such a provision.
[3] Louisiana Revised Statutes 51:212(6) does provide that a "mark" is not registerable if it is so similar to a trade name that it would be likely to cause confusion, but makes no mention of protection of a trade name vis-a-vis another trade name.
[4] Section 223.1, added in 1984, does specifically provide protection from dilution for a "trade name", and is discussed infra.
[5] Louisiana Revised Statutes 51:213 does, however, allow one to reserve a trademark or trade name for a period of sixty days, plus two extensions of thirty days, even though the mark or name has not yet been used.
[6] However, where the geographic term is arbitrary and bears no relation to the goods, services or business, secondary meaning need not be proven. For examples, see World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482 (5th Cir.1971) ("World" on carpets); National Lead Co. v. Wolfe, 223 F.2d 195 (9th Cir.1955) ("Dutch" and "Dutch Boy" on paint).
[7] For a discussion of the origin, evolution, and history of trademark and trade name law, see generally Restatement (Third) of Unfair Competition, §§ 9 & 12 and comments (1995); 1 McCarthy, §§ 1.01-17, 2.01-14, 4.01-5, 11.09; 3 Callman, Unfair Competition, Trademarks & Monopolies, §§ 17.05, 19.25 (1985); 74 Am.Jur.2d Trademarks and Tradenames, §§ 1-8 (1974).
[8] The Restatement defines "trademark" as "a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person's goods or services and that is used in a manner that identifies those goods or services and distinguishes them from the goods or services of others." Restatement § 9. The Restatement defines "trade name" as "a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person's business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others." Restatement § 12. This comports with the definitions provided in the Lanham Act, 15 U.S.C. 1127, The Model Trademark Bill § 1, and Louisiana Revised Statutes 51:211.
[9] We note that our recent reference to Straus Frank and its fraud requirement in Barrera v. Ciolino, 92-2844, p. 14 (La. 5/5/94), 636 So.2d 218, 225 was dicta. That case dealt with interpretation of a contract by which the plaintiffs purchased the defendants' business, Ciolino Pharmacy, Inc., and whether the terms of the contract itself permitted the defendants to use their family name, Ciolino, in opening a new business.
[10] In its oral reasons for judgment, the trial judge stated:

With all of the rules, banks being a heavily regulated industry with all of the print on the bottom of checks with that line of magnetic ink and so forth, the distances between the parties, I feel they are not deceptively similar and, therefore, I would find that Gulf Coast Bank is not entitled to the relief that they request andin other words, motion for summary judgment of Gulf Coast Bank ... is denied. Gulf Coast Bank and Trust Company's motion for summary judgment is granted.
It is unclear whether the trial judge was addressing Gulf Coast Bank's claim that the mere fact of registering its corporate name pursuant to Louisiana Revised Statutes 12:23 entitled it to a judgment as a matter of law, or its claim for trade name infringement, or both. Louisiana Revised Statutes 12:23 provides for the registration of corporate names and states, "The corporate name shall not be the same as, nor deceptively similar to, a name reserved pursuant to R.S. 12:23(G) and shall not be the same as, nor deceptively similar to, the name of any other corporation or trade name registered with the secretary of state." (emphasis added). A claim for trade name infringement requires a showing of likelihood of confusion. At any rate, we need not decide the scope of R.S. 12:23, nor whether the standard for showing deceptive similarity under R.S. 12:23 is the same as showing a likelihood of confusion under trade name infringement, although some Louisiana courts have held the standards to be the same. Couhig's Pestaway Co. v. Pestaway, Inc., 278 So.2d 519, 521 (La.App. 3d Cir.1973); Guardian Life Ins. Co. of America v. Guardian Nat'l Life Ins. Co., 184 F.Supp. 851 (E.D.La.1960). See also Metalock Corp. v. Metal-Locking of Louisiana, Inc., 260 So.2d 814 (La. App. 4th Cir.1972). As explained, infra, Gulf Coast Bank's documents and affidavits submitted into evidence are sufficient to raise a material question of fact as to whether a likelihood of confusion exists, thus defeating Gulf Coast Bank & Trust's cross motion for summary judgment.
[11] In Falcon Rice Mill, Inc., the case involved trade dress infringement. However, these factors are similar to those used by other courts in trademark and trade name cases. This factor oriented approach is generally attributable to Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir.1961), a case involving noncompeting goods, but has generally been held to apply in all infringement cases. See e.g. Falcon Rice Mill, Inc., supra; Thompson Medical Co. v. Pfizer, Inc., 753 F.2d 208 (2d Cir.1985); J.B. Williams Co. v. Le Conte Cosmetics, Inc., 523 F.2d 187 (9th Cir.1975).
[12] Under the federal Lanham Act, nationwide constructive notice is created by registration of a trademark, thereby, in large part, eliminating the problems associated with territoriality for trademarks registered under the Lanham Act. See 15 U.S.C. 1057(c).
[13] If the mark or name in question is of a type which requires secondary meaning for protection, this rule is slightly different, and only those areas in which the senior user's mark or name has achieved secondary meaning at the time of the junior user's commencement are considered as not being remote. Bank of Texas v. Commerce Southwest, Inc., 741 F.2d 785 (5th Cir.1984); Shoppers Fair, Inc. v. Sanders Co., 328 F.2d 496 (8th Cir.1964); Katz Drug Co. v. Katz, 188 F.2d 696 (8th Cir.1951); Home Sav. of America v. Home Sav. Ass'n, 219 U.S.P.Q. 157 (S.D.Tex. 1982); Buscemi's Inc. v. Anthony Buscemi Delicatessen & Party Store, Inc., 96 Mich.App. 714, 294 N.W.2d 218 (1980); Restatement, § 19, comment b; 3 McCarthy, § 26.10.
[14] The theory of extending protection to one's natural zone of expansion was born out of the following language in Hanover: "We are not dealing with a case where the junior appropriation of a trademark is occupying territory that would probably be reached by the prior user in the natural expansion of his trade...." Hanover Star Milling Co., 240 U.S. at 420, 36 S.Ct. at 363.